MURPHY, RESPONDENT, *v.* NETT, APPELLANT.

(No. 3,221.)

(Submitted January 15, 1913.   Decided February 13, 1913.)

[130 Pac. 451.]

*Wills—Contest of Probate—Undue Influence—Testamentary Incapacity—Insanity—Pleading—Evidence—Declarations—Expert Testimony—Rebuttal—Admissibility.*

Dismissal of Appeal from Judgment—Effect on Appeal from New Trial Order.
  1.  The fact that his appeal from the judgment was dismissed on motion of respondent does not deprive the appellant of the right to have his appeal from the order denying his motion for a new trial in the same cause, taken subsequently, heard and determined.

Wills—Contest of Probate—Pleading—Insufficiency—Harmless Error.
  2.  Where in a will contest the jury, while making a finding as to testamentary incapacity, failed to find undue influence, though the statement of contest sought to set the instrument aside on both grounds, and the decree was based solely on the finding as made, the question whether the pleading sufficiently alleged undue influence *held* immaterial.

Same—Undue Influence—Pleading—Sufficiency.
  3.  The allegation of undue influence in a statement of contest of a proposed will need not specify with particularity the entire details of the manner in which such influence was exercised; if ultimate facts are alleged from which the legal conclusion of undue influence fairly follows, the pleading is sufficient to support proof.

Same—Undue Influence—What may Constitute.

4. Demands and importunities may amount to undue influence, without being coupled with fraud, threats or misrepresentation; whether they do or not depending upon what they were, how persistently and under what circumstances they were employed, and whether the mind of the testator was so infirm as to be overpowered by them.

Same—Injustice of—Admissibility in Evidence—For What Purpose.

5. Under the rule that, though the injustice or unreasonableness of a will is not alone sufficient to cause its rejection, it is a circumstance bearing upon the questions of testamentary capacity and undue influence, the facts that the testator's mother (contestant) had transferred all her real and personal property to him and that he knew this before he made his will, naming a sister his sole beneficiary, were properly admitted in evidence.

Appeal—Improper Admission of Evidence—When Appellant may not Complain.

6. Where manifestly improper testimony was elicited in response to five separate interrogatories, none of which was objected to, appellant was not in a position to claim error because of the court's refusal to order it stricken from the record.

Wills—Declarations of One of Several Beneficiaries—When Admissible.

7. The rule that where there are two or more beneficiaries under a will having a common or several, but not joint, interest in its provisions, the declarations of one of them as to testamentary capacity or undue influence are inadmissible to affect its validity, has no application in a case where the only real beneficiary to be adversely affected by such declarations was declarant (proponent of the instrument), the others, to each of whom was left one dollar, having been beneficiaries in name only.

Appeal—Instructions—When Appellant may not Complain.

8. Of an instruction in appellant's favor he cannot complain.

Wills—Insanity—Invading Province of Jury—Expert Testimony—When not Objectionable.

9. Where the validity of a will was attacked on the ground that at the time of its execution testator was insane,—contestee asserting that he then had a lucid interval, and contestant maintaining that his ailment did not permit of lucid intervals, the evidence showing that shortly before and soon after the date of the instrument he was shown to have been of unsound mind, dying ultimately of dementia,—rebuttal testimony by insanity experts that in their opinion testator could not have had a lucid interval at the time in question, *held,* not objectionable as invading the province of the jury.

Same—Capacity to Make—Test—Instruction—Proper Refusal.

10. While contractual capacity implies, *prima facie,* capacity to make a will, neither is a test for the other, and the presence or absence of one does not conclusively establish the presence or absence of the other; hence, an instruction in a will contest that a less degree of mind is required to execute a will than is necessary to execute a contract was properly refused.

Same—Evidence—Sufficiency.

11. Where in a will contest there was ample evidence to sustain it and substantial evidence against its validity, the decree of the trial court will not be disturbed on appeal for alleged insufficiency of the evidence to sustain it.

*Appeal from District Court, Lewis and Clark County; Llew L. Callaway, a Judge of the Fifth Judicial District, presiding.*

WILL CONTEST by Mary Murphy against Anna E. Nett. From an order denying a motion for new trial, defendant appeals. Affirmed.

*Messrs. H. G. & S. H. McIntire,* for Appellant, submitted a brief and one in reply of that of Respondent; *Mr. H. G. McIntire* argued the cause orally.

The allegations of the contest, contained in paragraph 5 thereof, were not sufficient to warrant the introduction of any evidence of undue influence. Briefly stated, the substance of the allegations of undue influence here presented is: That at and prior to the execution of the will in question decedent was weak and ill in body and mind; that he needed care and attention; that Anna Elvira Nett acted as his guardian and custodian of his person and property, and was constantly with him, and that he was entirely dependent upon her for care and attention; that he was under the care of physicians and nurses selected by her; that he was easily influenced by those in whose custody he was; that Anna Elvira Nett acquired and had a great and controlling influence over his mind and will, and was thereby able to and did direct and dictate what he should do in the matters pertaining to his property; that she, prior to the execution of the will, did demand and importune of him to leave his property to her, to the exclusion of his other relatives, and that she did so prevail upon and influence him, and that such will was not his free or voluntary act.

The definition of the words "undue influence" would seem to include some fraud, misrepresentation, coercion or illegal and unlawful act. Influence may be exercised in many ways, but we can scarely conceive of "undue influence" being exercised without there entering into it some of the elements above stated.

It seems to be a well-settled principle that undue influence must be exercised at the time the will is executed, and must be the reason of its execution. (*Ricks' Estate,* 160 Cal. 467, 117 Pac. 539; *Kilborn's Estate,* 162 Cal. 4, 120 Pac. 762; *Morcel's Estate,* 162 Cal. 188, 121 Pac. 733; *Beyer* v. *Le Fevre,* 186 U. S.

114, 46 L. Ed. 1080, 22 Sup. Ct. Rep. 765; *Schmidt* v. *Schmidt,*
201 Ill. 191, 66 N. E. 374; *Francis* v. *Wilkinson,* 147 Ill. 370,
35 N. E. 150; *Pennsylvania etc. Ins. Co.* v. *Union Trust Co.,*
83 Fed. 896; *Kelly* v. *Perrault,* 5 Idaho, 221, 48 Pac. 45; *Calef's
Estate,* 139 Cal. 673, 73 Pac. 539; *Compher* v. *Browning,* 219
Ill. 429, 109 Am. St. Rep. 346, 76 N. E. 678; *Nelson's Estate,*
132 Cal. 182, 64 Pac. 294; *Ginter* v. *Ginter,* 79 Kan. 721, 22 L.
R. A., n. s., 1024, 101 Pac. 634.)   Of course, if undue influence
has. been exercised prior to the execution of the will, in order
that the same be objectionable, or that advantage may be taken
of it, the party claiming its existence must allege and prove that
such undue influence continued down to the very moment of the
execution of the will, and that such execution was the result of
such undue influence, and not the free and voluntary act of the
testator.   We find no allegations in the contest nor proof in the
record  even tending to show such facts.

It is also well settled that one who has cared for the testator
during his illness, and is a relative, is entitled to request testa-
mentary disposition in his favor, and such request, demand or
importunity is not an exercise of undue influence.   (*Beyer* v. *Le
Fevre, supra.*)   One may, therefore, endeavor to obtain a tes-
tamentary disposition by the use of any argument which he
may see fit to make, provided that no threats, fraud or misrepre-
sentations are made, which would in any way tend to wrongfully
influence the testator.

It is also equally well settled that, in order to amount to un-
due influence, some fraud must be practiced, some threats or
misrepresentations made, some undue flattery, or some physical
or moral coercion employed, so as to destroy the free agency of
the testator.   (*In re Murray's Estate,* 11 Pa. Co. Ct. Rep. 263;
*Tawney* v. *Long,* 76 Pa. (26 P. F. Smith) 106; *In re Pensyl's
Estate,* 157 Pa. 465, 27 Atl. 669; *In re Logan's Estate,* 195 Pa.
282, 45 Atl. 729; *Herster* v. *Herster,* 122 Pa. 239, 9 Am. St.
Rep. 95, 16 Atl. 342; *Gilbert* v. *Gilbert,* 22 Ala. 529, 58 Am.
Dec. 268; *Patterson* v. *Lamb,* 21 Tex. Civ. App. 512, 52 S. W.

98; *Trumbull* v. *Gibbons,* 22 N. J. L. (2 Zab.) 117; *McCulloch* v. *Campbell,* 49 Ark. 367, 5 S. W. 590.)

The influence of gratitude, affection or attachment, or the desire of gratifying the wishes of another, do not amount to undue influence. (*Campbell* v. *Carlisle,* 162 Mo. 634, 63 S. W. 701, 704; *Williams* v. *Goude,* 3 Ecc. R. 252, 261; *Duffield* v. *Robeson,* 2 Harr. (Del.) 375; *In re Disbrow's Estate,* 58 Mich. 96, 24 N. W. 624; *Patterson* v. *Lamb,* 21 Tex. Civ. App. 512, 52 S. W. 98; *In re Halbert's Will,* 15 Misc. Rep. 308, 37 N. Y. Supp. 757; *In re Gleepin's Will,* 26 N. J. Eq. (11 C. E. Green) 523; *In re Elliott's Will,* 25 Ky. (2 J. J. Marsh.) 340; *Monroe* v. *Barclay,* 17 Ohio St. 302, 93 Am. Dec. 620.) The existence of confidential relations between the testator and the one accused of exercising undue influence alone is not sufficient (*Mackall* v. *Mackall,* 135 U. S. 167, 34 L. Ed. 84, 10 Sup. Ct. Rep. 705); neither is the existence of opportunity (*Smith* v. *Smith,* 67 Vt. 443, 32 Atl. 255; *Riley* v. *Sherwood,* 144 Mo. 354, 45 S. W. 1077); nor suggestions made for the purpose of procuring testamentary disposition by fair persuasion or kind offices. (*McCulloch* v. *Campbell,* 49 Ark. 367, 5 S. W. 590; *Rogers* v. *Diamond,* 13 Ark. 475; *McDaniel* v. *Crosby,* 19 Ark. 533.) Neither is it sufficient that the testator was influenced by the beneficiary in the ordinary affairs of life, or that he was surrounded by the beneficiaries and in confidential relations with them, prior to and at the time of the execution of the will. (*McCulloch* v. *Campbell,* 49 Ark. 367, 5 S. W. 591; *Rutherford* v. *Morris,* 77 Ill. 397.) The result of undue influence, in order to invalidate a will, must be in effect to substitute the will of the person exercising the undue influence for that of the testator. (*Pennsylvania etc. Ins. Co.* v. *Union T. Co.,* 83 Fed. 896; *In re Kohler,* 79 Cal. 313, 21 Pac. 758; *Mackall* v. *Mackall,* 135 U. S. 167, 34 L. Ed. 84, 10 Sup. Ct. Rep. 705; *In re Calkins' Estate,* 112 Cal. 301, 144 Pac. 577.) The mere fact that the actions of the party did influence the testator is insufficient, unless the action included fraud, misrepresentation, coercion or some illegal and unlawful element of like character. (*In re Lyddy's Will,* 53

Hun, 629, 5 N. Y. Supp. 636; *In re McGraw's Will,* 9 App. Div. 372, 41 N. Y. Supp. 481.)

There is no allegation in the written contest that Mrs. Nett had anything to do with the preparation of the will, and there is no testimony in the record in any way tending to show that she did have. We therefore submit that the demurrer should have been sustained, and the contest held insufficient to raise any issue on the question of undue influence. (*In re Gharky,* 57 Cal. 274; *In re Sheppard's Estate,* 149 Cal. 219, 85 Pac. 312; *Ginter* v. *Ginter,* 79 Kan. 721, 22 L. R. A., n. s., 1024, 101 Pac. 636; *McCulloch* v. *Campbell,* 49 Ark. 367, 5 S. W. 591; *Schmidt* v. *Schmidt,* 201 Ill. 191, 66 N. E. 374; *Turner* v. *Gumbert,* 19 Idaho, 339, 114 Pac. 33; *Converse* v. *Mix,* 163 Wash. 318, 115 Pac. 305.)

The admission in evidence of the will of Mary Murphy and of the transfer of her property to the testator was error. The only question to be tried in the contest of a will is its validity, and the supreme court of the United States has announced that the manner in which a decedent acquired his title is wholly immaterial. (*Ormsby* v. *Webb,* 134 U. S. 47, 33 L. Ed. 805, 10 Sup. Ct. Rep. 478.)

The court erred in admitting in evidence the guardianship petition filed by Mrs. Nett, about four months after the will in question was executed. (*Entwistle* v. *Meikle,* 180 Ill. 9, 54 N. E. 217; *Wetzel* v. *Firebaugh,* 251 Ill. 190, 95 N. E. 1085; *Terry* v. *Buffington,* 11 Ga. 337, 56 Am. Dec. 423.)

The court permitted counsel for respondent over appellant's repeated objections to introduce in evidence certain declarations and admissions of Mrs. Nett (not made in the presence of either of the other beneficiaries under the will), as bearing upon the question of the mental capacity of the testator. The theory upon which such testimony is excluded on the question of mental competency is that it might defeat the will as to the other legatees who made no such admissions, and were not parties to the same. All legatees are jointly interested in the validity of the will, and under our law the will must be pro-

bated, if at all, as an entirety. Therefore, it would be the height of inequity to permit the admission of one legatee, to which the others were not parties, to defeat the will and deprive the other legatees of their rights thereunder. Such testimony is therefore inadmissible, either upon the question of ment:.l competency or upon the question of undue influence. (*Eastis* v. *Montgomery,* 93 Ala. 293, 9 South. 311; *In re Dolbeer's Estate,* 153 Cal. 652, 15 Ann. Cas. 207, 96 Pac. 266; *Livingston's Appeal,* 63 Conn. 68, 26 Atl. 470; *Campbell* v. *Campbell,* 138 Ill. 612, 28 N. E. 1080; *Vannest* v. *Murphy,* 135 Iowa, 123, 112 N. W. 236; *Shailer* v. *Bumstead,* 99 Mass. 112; *O'Connor* v. *Madison,* 98 Mich. 183, 57 N. W. 105; *Teckenbrock* v. *McLaughlin,* 209 Mo. 533, 108 S. W. 46; *Carpenter* v. *Hatch,* 64 N. H. 573, 15 Atl. 219; *In re Myers' Will,* 184 N. Y. 54, 6 Ann. Cas. 26, 76 N. E. 920; *Linebarger* v. *Linebarger,* 143 N. C. 229, 10 Ann. Cas. 596, 55 S. E. 709; *Thompson* v. *Thompson,* 13 Ohio St. 356; *Nussear* v. *Arnold,* 13 Serg. & R. (Pa.) 323; *Helsley* v. *Moss,* 52 Tex. Civ. App. 57, 113 S. W. 599; *Forney* v. *Ferrell,* 4 W. Va. 729.)

Error in admitting evidence which tends to prejudice the mind of the jury is not cured by a direction in the charge of the court to the jury to disregard the evidence and by withdrawal of it from consideration. The instruction comes too late to cure the mistake. (*Throckmorton* v. *Holt,* 180 U. S. 552, 45 L. Ed. 663, 21 Sup. Ct. Rep. 474; *Erie* v. *Railroad Co.,* 125 Pa. 259, 11 Am. St. Rep. 895, 17 Atl. 443; *Gulf etc. R. R. Co.* v. *Levy,* 59 Tex. 542, 46 Am. Rep. 269; *Hamory* v. *Pennsylvania Ry. Co.,* 222 Pa. 631, 72 Atl. 227; *Nelson* v. *Spears,* 16 Mont. 351, 40 Pac. 786; *State* v. *Rees,* 40 Mont. 571, 107 Pac. 893.)

Respondent may not be heard to say or to claim before this court that the error in the admission of this testimony was harmless. Her attorneys introduced the testimony and insisted upon its admission, and she and they are now estopped from saying that such admission was harmless error. (*Lissak* v.

*Crocker Estate Co.,* 119 Cal. 442, 51 Pac. 688; *Smith* v. *Wester-field,* 88 Cal. 374, 26 Pac. 206.)

It is a well-settled rule, uniformly upheld by numerous adjudications, that it requires a less degree of mental capacity to make a will than to make a contract, or to transact ordinary business. (*Keely* v. *Moore,* 196 U. S. 38, 49 L. Ed. 376, 25 Sup. Ct. Rep. 169; *Fraser* v. *Jennison,* 42 Mich. 206, 3 N. W. 882; *Dean* v. *Dean,* 42 Or. 290, 70 Pac. 1039; *Delafield* v. *Parish,* 25 N. Y. 9; *Bey's Succession,* 46 La. Ann. 773, 24 L. R. A. 577, 15 South. 297; *Greene* v. *Greene,* 145 Ill. 264, 33 N. E. 941; *Craig* v. *Southard,* 148 Ill. 37, 35 N. E. 361; *Keithley* v. *Stafford,* 126 Ill. 507, 18 N. E. 740; *Hanrahan* v. *O'Toole,* 139 Iowa, 229, 117 N. W. 675; *Burney* v. *Torrey,* 100 Ala. 157, 46 Am. St. Rep. 33, 14 South. 685; *Kinne* v. *Kinne,* 9 Conn. 102, 21 Am. Dec. 732; *Potts* v. *House,* 6 Ga. 324, 50 Am. Dec. 329; *Wood* v. *Lane,* 102 Ga. 199, 29 S. E. 180; *Sinnet* v. *Bowman,* 151 Ill. 146, 37 N. E. 885; *Leeper* v. *Taylor,* 47 Ala. 221; *Southworth* v. *Southworth,* 173 Mo. 59, 73 S. W. 129; *Slaughter* v. *Heath,* 127 Ga. 747, 27 L. R. A., n. s., 1, 57 S. E. 69.)

The proponent is not required to do more than furnish rebutting proof, and if in the end the contestant has not sustained the burden, his contest must fail. This, too, is the general rule. (Beach on Wills, sec. 98; *Dolbeer's Estate,* 149 Cal. 227, 9 Ann. Cas. 795; 16 Current Law, p. 2615, note 58; *Councill* v. *Mayhew,* 172 Ala. 295, 55 South. 314.)

The jury were told in instruction No. 7, in substance, that if they found habitual insanity prior to the making of the will, the burden of showing capacity at its execution shifted to the proponent. It is impossible to distinguish this instruction from that held erroneous in *Roller* v. *Kling,* 150 Ind. 159, 49 N. E. 948. (See, also, *Carver* v. *Carver,* 97 Ind. 497, 511; *Heinemann* v. *Heard,* 62 N. Y. 448; *State* v. *Peel,* 23 Mont. 358, 75 Am. St. Rep. 529, 59 Pac. 169.)

The evidence in this case is not sufficient to overthrow the will in question, under the rule laid down in *Dolbeer's Estate,* 149 Cal. 227, 9 Ann. Cas. 795, 86 Pac. 695; *Burley* v. *McGough,*

115 Ill. 11, 3 N. E. 739; *Treat* v. *Bates,* 27 Mich. 390; Jones on Evidence, 2d ed., secs. 390, 391.

*Messrs. Galen & Mettler,* for Respondent, submitted a brief; *Mr. Albert J. Galen* argued the cause orally.

It is argued that the allegation and proof as to the property of testator, and as to when and how he obtained it, were not property to be considered upon the hearing of the contest. We maintain that this proof was competent, not only as a part of the case of the contestant, as bearing upon the issue of undue influence, but also upon the issue of insanity. One of the tests by which the jury determines whether the testator was sane or insane at the time he made the will, is whether he comprehended, at the time of the execution of the will, the nature and extent of the property which was to be disposed of, and recollected the natural objects of his bounty. By the proof which was admitted of the transactions which finally culminated in Mrs. Murphy's devesting herself of all of her property in favor of her son, Edward J. Murphy, the jury might have concluded, and evidently did conclude, that Edward J. Murphy did not have in mind the nature and extent of his property, when he made his will, nor the natural object of his bounty. Any proof which will enlighten the jury upon these points is competent to be introduced upon the trial of a will contest upon the issue of testamentary capacity. (40 Cyc. 1004, notes 3, 4.) A wide range of inquiry is permitted into the life history of testator and the relations between the persons he dealt with. (*Barber's Exrs.* v. *Baldwin,* 138 Ky. 710, 128 S. W. 1092.) Evidence showing the financial condition of excluded relatives is admissible in a will contest. (*Rasdall* v. *Brush* (Ky.), 104 S. W. 749; *Wallen* v. *Wallen,* 107 Va. 131, 57 S. E. 596.) It is proper to prove on the issue of testamentary capacity the nature, extent and sources of testator's estate. (*Taylor* v. *McClintock,* 87 Ark. 243, 112 S. W. 405.) Evidence as to how testatrix came by her property is admissible in order to show possible motives actuating her in disposing of it. (*Floore* v. *Green* (Ky.), 83

S. W. 133.)    The extent of testator's estate and his next of kin, and also the relations existing between the testator and any beneficiary under the will, may be shown as bearing upon the question of mental capacity.  (*Spratt* v. *Spratt,* 76 Mich. 384, 43 N. W. 627.)    On an issue of testamentary capacity contestant may show the manner in which deceased acquired the property disposed of by the will.    (*In re Wilson's Estate,* 117 Cal. 262, 49 Pac. 172, 711.)

Declarations and admissions of Mrs. Nett: Counsel's argument upon this branch of the case is based upon the false assumption that there are other beneficiaries of the will of Edward J. Murphy besides Mrs. Nett.   Declarations and admissions of a want of legal capacity can only be shown when made by a sole legatee under the will.    (*Stull* v. *Stull,* 1 Neb. (Unof.) 389, 96 N. W. 196; *Ames* v. *Blades,* 51 Iowa, 596, 2 N. W. 408; *Renaud* v. *Pageot,* 102 Mich. 568, 61 N. W. 3; *Beyer* v. *Schlenker,* 150 Mo. App. 671, 131 S. W. 465.)    "The conduct and declarations of those procuring a will by unlawful means, tending to show their purpose, are competent evidence on a will contest, unless other innocent devisees would be injured thereby."    (2 Current Law, 2087, note 19.)    It is competent to prove the declarations of a beneficiary tending to show confidential relations between himself and testator.    (*Robinson* v. *Robinson,* 203 Pa. 400, 436, 53 Atl. 253.)    The statements of the wife to whom the greater part of the estate was left, tending to show ill-will toward two sons disinherited, and to the effect that she would see to it that they should get no part of the testator's estate, are admissible. (*Powers* v. *Powers,* 25 Ky. Law Rep. 1468, 78 S. W. 152.)    The statements of the husband of testatrix that he would see to it that contestants would receive nothing are admissible.    (*Wall* v. *Dimmitt,* 24 Ky. Law Rep. 1749, 72 S. W. 300.)

Upon the proposition that a "less degree of mind is required to execute a will than a contract," we respectfully submit the following: "The capacity to make a valid will or to make a contract is precisely the same."    (*Coleman* v. *Robertson's Exrs.,* 17 Ala. 84.)    "The rule by which the capacity of a testator

is to be measured is whether at the time of executing or acknowledging his will, he was capable of executing a valid deed or contract." (*Davis* v. *Calvert*, 5 Gill & J. (Md.) 269, 25 Am. Dec. 282; *Tyson* v. *Tyson*, 37 Md. 567, 582.) "The highest degree of mental soundness is required in order to constitute capacity to make a testamentary disposition, inasmuch as the act involves a larger and a wider survey of facts and things than is required in the other transactions of life." (*Boughton* v. *Knight*, L. R. 3 P. & D. 64; see, also, *Aubert* v. *Aubert*, 6 La. Ann. 104.)

In a will contest, in which there was evidence that testator was afflicted with senile dementia, and also evidence that senile dementia is not necessarily a settled condition of the mind, an instruction that it was presumable that the demented condition continued up to the time the will was made, so that the burden of proof was on proponents to show a lucid interval, was erroneous, the presumption of the continued existence of the unsoundness of mind only attaching when such unsoundness is shown to be a settled condition. (*In re Glass' Estate*, 127 Iowa, 646, 103 N. W. 1013.) All that contestant had to do in order to shift the burden was to show that on a date prior to the date of the execution of the will testatrix was suffering from a disease of the mind of a permanent, progressive nature, amounting to unsoundness. (*In re Jones' Estate*, 130 Iowa, 177, 106 N. W. 610.) If the contestant show that testator was affected with permanent insanity prior to the execution of the will, the burden of proving capacity is shifted to the proponent. (*Gesell* v. *Baugher*, 100 Md. 677, 60 Atl. 481.) Where there is shown a chronic imbecility preceding the execution of the will, its continuity is presumed, and the proponents of the will must prove an interval of competency. (*Von De Veld* v. *Judy*, 143 Mo. 348, 44 S W. 1117; affirmed, 45 S. W. 1128.)

"Generally, the burden of showing that a will was procured by undue influence rests upon those who assert the fact; but when the contestants have made a *prima facie* case by the production of evidence, from which the presumption of undue in-

fluence arises, the burden is then upon the proponent to show that the instrument is the will of testator. It is not very material whether we say that in such a case the burden shifts, or that the evidence produced, aided by the presumption which arises therefrom, is evidence sufficient to make a *prima facie* case. What is meant is that a point is reached when the contestant prevails, unless the proponent assumes the obligations of going forward with his evidence.'' (*In re Tyner's Estate,* 97 Minn. 181, 106 N. W. 898.)

MR. JUSTICE SANNER delivered the opinion of the court.

Edward J. Murphy died on November 27, 1909, leaving an estate worth approximately $30,000, and one heir at law, his mother, Mary Murphy, the respondent on this appeal. His other near relatives are a full sister, Anna E. Nett, the appellant here, and two brothers and three sisters of the half blood. An instrument purporting to be his last will and testament, executed December 12, 1908, was offered by the appellant for probate, and its right to be received and regarded as his last will and testament is contested by the respondent, upon the grounds that at the time of its execution the testator lacked testamentary capacity, and was acting under undue influence of the appellant. By the terms of this will one dollar was given to each of the half brothers and sisters, and the balance of his property was left to appellant, on condition that she should, out of the property, support and care for the respondent during the remainder of respondent's life.

This is the second appeal in this matter. On the former appeal (see *In re Murphy's Estate,* 43 Mont. 353, Ann. Cas. 1912C, 380, 116 Pac. 1004), the judgment in favor of respondent was reversed, and the cause remanded for a new trial on account of certain errors in the instructions. The case was retried, and the jury found for the respondent upon the issue of testamentary capacity. This appeal is from an order denying appellant's motion for a new trial.

1. The respondent suggests that this appeal ought not to be considered, because an appeal was taken from the judgment herein and dismissed on motion of respondent, and because the appellant has, by failure to discuss it, abandoned specification No. 3, which claims error in the overruling of the motion for new trial. Concerning the appeal from the judgment, the argument is [1] that by its dismissal the judgment was affirmed and became final, and cannot now be undermined by a reversal of the order overruling the motion for new trial. In *Molt* v. *Northern Pac. Ry. Co.*, 44 Mont. 471, 120 Pac. 809, we considered some of the difficulties incident to our present appellate procedure; and it is a necessary consequence from what is there said that, where separate appeals, permissible under the statute, are taken in the same case, the fate of one is not necessarily involved in the fate of the other. Nor is there any merit in the supposed abandonment of specification No. 3. While we do not find in appellant's brief any discussion of specification No. 3 *eo nomine*, the entire brief reads like an argument devoted to the theme that the motion for a new trial should have been sustained.

2. It is contended that the allegations of undue influence, as set forth in the amended statement of contest, were insufficient, and that the trial court erred in not eliminating this subject from the case. Doubt may be entertained as to whether this matter was ever properly raised in the district court; but, assuming it to be properly before this court, it presents two aspects: As affecting the integrity of the judgment, and as furnishing a basis for the introduction of evidence. As regards the integrity of the judgment, the question is purely academic, because [2] there was no finding of undue influence. There were sufficient allegations in the amended statement of testamentary incapacity, and upon that only was there any finding by the jury. Since this finding is the sole support of the judgment, it cannot matter to the judgment what may be the deficiency in the allegations relating to undue influence. (*In re Murphy's Estate, supra.*) Vigorous language is employed, however, to convince us that, if the subject of undue influence had been eliminated

from the pleadings, no testimony could have been received upon
it; and that, inasmuch as a great part of the record consists
of such testimony, clearly creative of prejudice in the ordinary
mind, its effect in producing the finding upon the other issue
must be manifest, and this court should send the case back for
a new trial.   There is enough merit in this to warrant a de-
termination of the question raised.

"Undue influence," as applied to cases of wills, has been
variously defined.   In the former appeal of this case it was stated
to be such as "imposes a restraint on the will of the testator,
who, but for the restraint, would be free and responsible, so
that his testamentary act is not the result of his own volition,
but the will of another"; and this, in connection with our statute
(Rev. Codes, sec. 4981), is sufficient for all practical purposes.
The theory underlying the doctrine of undue influence is that
the testator is induced, by the means employed, to execute an
instrument in form and appearance his will, but in reality ex-
pressing testamentary dispositions which he would not have
voluntarily made.   (40 Cyc. 1146; Page on Wills, sec. 126, p.
145.)   To defeat a will, the undue influence must have been
directed toward the particular testamentary act and at the
time thereof, or so near thereto as to be operative.   (40 Cyc.
1145; Page on Wills, sec. 130, p. 151.)   As such influence is
[3]   seldom exercised openly, it cannot be expected that a plead-
ing should specify with particularity the entire details of the
manner in which it was used.   If ultimate facts are alleged
from which the legal conclusion of undue influence fairly fol-
lows, it is sufficient to support proof.   (*Estate of Gharkey,* 57
Cal. 274; *Sheppard's Estate,* 149 Cal. 219, 85 Pac. 312.)

Now, as constituting undue influence, the amended statement
at bar alleges that when the will was made, the decedent was,
and for a long time prior thereto had been, so afflicted with
disease of the body and mind that he was unable to properly take
care of himself, and was in constant need of the care and at-
tention of some other person, and became so weakened in mind
and body and reasoning faculties that he was easily influenced

by those under whose care and into whose custody he came; that during all such time appellant acted as guardian and custodian of his person and property, was almost constantly with him, and he was entirely dependent on her for the care and attention of which he stood in need; that as a patient he was constantly in charge of physicians and nurses selected and employed by her; that by reason of all these things she acquired and had, at the time the will was made, a great and controlling influence over his mind and will, and was able to and did direct and dictate to him what he should do in matters pertaining to his property; that, "taking a grossly oppressive and unfair advantage of his necessities and distress of mind and body," she did, many times before the will was made, "demand and importune of him that he leave all his property by will to her, to the exclusion of all his other relatives, and particularly to the exclusion of his mother, the contestant herein"; that by reason of such demands and importunities she did so prevail upon and influence him in his then weakened condition of mind and body at the time the will was made that he did, against his will and wish, "in form execute the said purported will," but said will was not his free or voluntary act, and, had he been free from the said undue influence of appellant, he would not have made the will in question.

"Demands and importunities," it is said, are all that is here [4] alleged, and as demands and importunities may be entirely proper, they cannot alone support the charge of undue influence. We think that counsel unduly restrict the effect of respondent's allegations by ignoring the circumstances. In a case involving undue influence the question is not what effect the supposed influence would have had upon an ordinarily strong and intelligent person, but its effect upon the person on whom it was exerted, taking into consideration the time, the place and all the surrounding circumstances. (Page on Wills, sec. 126, p. 146; *Mooney* v. *Olsen,* 22 Kan. 69; *Gurley* v. *Park,* 135 Ind. 440, 35 N. E. 279; *Griffith* v. *Diffenderffer,* 50 Md. 466; *Shailer* v. *Bumstead,* 99 Mass. 112; *Rollwagen* v. *Rollwagen,* 63 N. Y.

504.) To say that demands and importunities can in no case amount to undue influence, unless coupled with fraud, threats or misrepresentation, is to misapprehend the purport of our statute and to beg the question. Whether they do or do not depends upon what they are, how persistently and under what circumstances they are employed, and whether the mind of the testator is so infirm as to be overpowered by them. It is here charged that the demands and importunities in question were of a certain peculiar character, were plied by a person standing in a certain special and controlling relation to the testator, at a certain period of time when, by reason of mental weakness, he was unable to resist, and that they caused him to do what he did not want to do, and would not have done if left alone. While we do not acclaim the pleading before us as a model, we think that, under such circumstances as are detailed, it is quite possible for demands and importunities to amount to undue influence, without actual fraud, menace or misrepresentation (*Hacken* v. *Newborn,* Style, 427; *Hall* v. *Hall,* L. R. 1 Prob. Div. 481; *Wingrove* v. *Wingrove,* L. R. 11 Prob. Div. 81; *Roman Catholic Episcopal Corp.* v. *O'Connor,* 14 Ontario L. R. 666; *Higginbotham* v. *Higginbotham,* 106 Ala. 314, 17 South. 516; *Barlow* v. *Waters* (Ky.), 28 S. W. 785; *Gordon* v. *Burris,* 141 Mo. 602, 43 S. W. 642; *Chappell* v. *Trent,* 90 Va. 849, 19 S. E. 314; *Lehman* v. *Lindenmeyer,* 48 Colo. 305, 109 Pac. 956); and therefore the pleading was sufficient as a basis for the introduction of evidence upon this subject.

3. Complaint is made of the denial of appellant's motion to strike paragraphs 6 and 7 from the amended statement, and of [5] the admission in evidence of the facts that in 1901 respondent made a will leaving all of her property to the decedent, and that in 1906 she made a transfer by deed and bills of sale of all her real and personal property to him. If these facts were admissible in evidence on any theory, then we need not inquire whether error occurred in the refusal to strike the allegation of them from the pleading, because it could have had no prejudicial effect. As to the facts themselves, while they

may appear remote and the deduction from them far-fetched, it cannot be said, as a matter of law, that they were not admissible on any theory. Indeed, appellant's counsel, on page 79 of their brief, seem to concede that such evidence might be competent if it were made to appear that, in pursuance of a purpose to secure all this property through undue influence upon the decedent, she had induced the respondent to make the will and transfer; and this is precisely what the pleading attempts to say. But independently of that the evidence was admissible. While the injustice or unreasonableness of a will is never alone sufficient to cause its rejection, it is always a circumstance bearing upon testamentary capacity and upon undue influence. (*In re Wilson's Estate,* 117 Cal. 262, 49 Pac. 172; *Sim* v. *Russell,* 90 Iowa, 656, 57 N. W. 601.) That his mother had willed and later had transferred to the decedent all her property, and that he knew these things before his will was made, were facts illustrating the reasonableness of his will, his realization of the extent and character of his property, and his ability to appreciate the special claims she had thereby created upon him. (*Pergason* v. *Etcherson,* 91 Ga. 785, 18 S. E. 29; *Taylor* v. *Mc-Clintock,* 87 Ark. 243, 112 S. W. 405; *Floore* v. *Green* (Ky.), 83 S. W. 133; *Lehman* v. *Lindenmeyer, supra; In re Ruffino's Estate,* 116 Cal. 304, 48 Pac. 127; *Gunn's Appeal,* 63 Conn. 254, 27 Atl. 1113; *Glover* v. *Hayden,* 4 Cush. (Mass.) 580.)

4. Upon the trial a motion by appellant to strike certain [6] testimony given by Mrs. Murphy touching her manner of living was denied. The court could very well have stricken this testimony, for it was manifestly improper and could serve no legal purpose. But error cannot be claimed because the evidence was evoked in response to five separate interrogatories, none of which were objected to. This court has repeatedly held that a party may not sit by in silence while objectionable questions are being asked and answered, and then complain because the record is not cleared on his motion to strike. (*Cohen* v. *Clark,* 44 Mont. 151, 119 Pac. 775.)

5. Over the objection of appellant "that one legatee or beneficiary of the will is not competent to make admissions affecting the validity of the will, so far as the sanity or insanity of the testator is concerned," certain statements, claimed to have been made by her, were admitted as declarations against interest. It is not necessary to state them in detail, because we think they were all admissible as against the objection made. It is elementary that upon a trial evidence may be given of the act, declaration or admission of a party as evidence against such party. (Rev. Codes, sec. 7887.) Doubtless, in will contests this rule is to be considered as modified by another: That, where [7] there are two or more legatees or beneficiaries under the will having a common or several, but not joint, interest in its provisions, the declarations of one of them as to testamentary capacity or undue influence are inadmissible to affect its validity, because the will cannot be defeated as to such legatee without being defeated as to all. (*Wood* v. *Carpenter,* 166 Mo. 465, 66 S. W. 172; *McConnell* v. *Wildes,* 153 Mass. 487, 26 N. E. 1115; *Shailer* v. *Bumstead, supra; Fothergill* v. *Fothergill,* 129 Iowa, 93, 105 N. W. 377; *Campbell* v. *Campbell,* 138 Ill. 612, 28 N. E. 1080; *In re Snowball's Estate,* 157 Cal. 301, 107 Pac. 598; *In re Myer's Will,* 184 N. Y. 54, 6 Ann. Cas. 26, 76 N. E. 920; *In re Dolbeer's Estate,* 153 Cal. 652, 15 Ann. Cas. 207, 96 Pac. 266.) But this case affords no occasion to apply the modification, because there is no one to be adversely affected by avoiding the will, save appellant herself. As to the brothers and sisters who are mere nominal legatees, recipients of a sum established by custom as a polite mode of disinheritance, it is a case where the law does not care for trifles. The real parties in interest are two, the appellant and the respondent; one, the sole substantial devisee under the will, offering it for probate; the other, sole heir at law, resisting probate. Under such circumstances the declarations or admissions of the devisee, if otherwise competent, ought to be, and are, admissible. (*Egbers* v. *Egbers,* 177 Ill. 82, 52 N. E. 285; *Teckenbrock* v. *McLaughlin,* 209 Mo. 533, 108 S. W. 46; *In re Myer's Will, supra;*

*Stull* v. *Stull,* 1 Neb. (Unof.) 389, 96 N. W. 196; *Beyer* v. *Schlenker,* 150 Mo. App. 671, 131 S. W. 465; *Wallis* v. *Luhring,* 134 Ind. 447, 34 N. E. 231; *Perret* v. *Perret,* 184 Pa. 131, 39 Atl. 33.) By instruction 21 the court sought to limit the jury, in their consideration of these declarations, to the question of undue influence; if there was any error in this, appellant cannot [8] complain, as it was to her advantage.

6. Two physicians, called in rebuttal as insanity experts, were [9] permitted to testify that, in their opinion, the testator could not have had a lucid interval when the will was made. Counsel for appellant say that this was the same as permitting the doctors to decide the very question before the jury, whether the testator was capable of making a will, and approved authority is cited to show that the province of the jury may not be thus invaded. We assent to the rule invoked, but not to its application. The decedent was shown to have been insane before December 1, 1908, and after Christmas of that year. He died the following year of dementia, which is the terminal stage of insanity in many of its forms, and a controversy had developed as to the nature of this insanity. It was the contention of the appellant that on December 12, 1908, the decedent was sane, was enjoying a lucid interval, and this, supported by formidable evidence, was consistent with the nature of his disease as asserted by her medical witnesses. For the opposition it was sturdily maintained that the disease was paresis, a general, progressive, permanent, incurable condition admitting no such thing as a lucid interval; if this were true, then the questions asked were but another way of emphasizing the respondent's contention as to the nature of the disease, and of inquiring whether the testator was of sound mind when the will was made. So considered, the question was within the scope of expert testimony.

7. Error is assigned upon the refusal of certain instructions and the giving of certain others. Appellant's offered instruction No. 5 was properly refused. It charged the rule to be that a less [10] degree of mind is required to execute a will·than a con-

tract, *etc.*, and many decisions are cited to show that this is good law, and should have been given to the jury. Respondent's counsel, on the other hand, present authorities which hold that the capacity to make a valid will or to make a contract is precisely the same, and that was the ground of their objection to the instruction. With all due respect to these learned decisions, we think that in such matters comparisons are odious, and, for purposes of instructing the jury, wholly unnecessary. To make a will or contract implies more than merely signing it, and it contravenes human experience to say that the conception, ordering and comprehension of a will dispensing, with care and precision, extensive property, involving, it may be, charities and trusts of various kinds, requires less capacity than the purchase of a bar of soap; or that the same intellectual capacity is required for the simple holograph, "I leave all my property to my wife," and for the elaboration of a complex trade agreement designed to accomplish far-reaching results. The conclusion of common sense is that it takes more mind to make some wills than to make some contracts, and *vice versa;* and there is excellent authority for the rule that, while contractual capacity implies *prima facie* the capacity to make a will, yet neither is a test for the other, and the presence or absence of one does not conclusively establish the presence or absence of the other. (Page on Wills, sec. 96; *Turner's Appeal,* 72 Conn. 305, 44 Atl. 310; *Brown* v. *Mitchell,* 88 Tex. 350, 36 L. R. A. 64, 31 S. W. 621; *Segur's Will,* 71 Vt. 224, 44 Atl. 342; *American Bible Society* v. *Price,* 115 Ill. 623, 5 N. E. 126; *Greene* v. *Greene,* 145 Ill. 264, 33 N. E. 941.)

Appellant's offered instruction No. 7 was substantially covered by the given instructions Nos. 6 and 8. The court's instruction No. 7 is attacked as assuming the testator's insanity, and as imposing upon the appellant a greater burden than properly belongs to her. Upon first reading this seems to be the case; but carefully read, and taken in connection with the other instructions, we do not think that No. 7 could have been so misleading or fruitful of prejudice to the appellant as to require a reversal of this case.

8. An exception appears to the ruling admitting certain testimony of the witness Taylor. This testimony was given on redirect examination, and he was entitled, after the plight in which the cross-examination had put him, to explain himself as best he could.

9. Upon the former appeal this court entered into a somewhat extended discussion of the evidence presented to show testamentary incapacity; with the result that, while it was characterized as "not as satisfactory as it might be," it was still held sufficient. There is nothing in the present record to require a change in either the characterization or the conclusion. There was ample evidence to sustain the will, and there was substantial [11] evidence against it. Under such circumstances we may not substitute our judgment for that of the judge and jury who tried the issue and had the advantage of personal observation of the witnesses. (*In re Noyes' Estate*, 40 Mont. 178, 105 Pac. 1013; *In re Murphy's Estate, supra; In re Wilson's Estate, supra.*) So, also, as regards the submission to the jury of the issue of undue influence. Taken at its utmost inferential value, the evidence on this subject was sufficient to warrant the action of the court.

There is no reversible error in the record, and the order appealed from is affirmed.

*Affirmed.*

Mr. Chief Justice Brantly and Mr. Justice Holloway concur.