HALE, Appellant, *v.* SMITH, Executor, et al., Respondents.

(No. 5,679.)

(Submitted May 21, 1925. Decided June 4, 1925.)

[237 Pac. 214.]

*Will Contest—Undue Influence—Definition—Burden of Proof —Evidence—Insufficiency.*

Will Contest—Undue Influence—What Constitutes.
1. Undue influence, sufficient to invalidate a will, must be such as to control the mental operations of the testator, overcome his power of resistance and thus cause him to adopt the will of another in the disposition of his property which he would not have made if left freely to act in accordance with his own pleasure.

1. Undue influence affecting or invalidating will, see notes in 16 Am. Dec. 257; 21 Am. St. Rep. 94; 31 Am. St. Rep. 670. See, also, 28 R. C. L. 137.

Same — Undue Influence — Close Relationship of Parties — Burden of
Proof.

2. The burden of proving undue influence upon testator in making
his will is upon the contestant, and in order to establish it as a fact it
must be shown by proof that it was exercised upon the mind of the
testator directly to procure its execution, mere suspicion that by rea-
son of the close relation between the testator and the beneficiary, the
latter may have had opportunity to ingratiate himself in the former's
favor and thus exercise influence over him, being insufficient.

Same—Undue Influence—Evidence—Insufficiency.

3. Evidence in an action to set aside a will on the ground of undue
influence alleged to have been exercised by a testator's niece, who was
made the principal beneficiary under the will, who for the last nine
years of the life of deceased had cared for him and whom he had
treated as his own daughter, *held* to show an entire absence of proof
of undue influence, and therefore insufficient to warrant its setting
aside on that ground.

Wills, 40 Cyc., p. 1144, n. 53; p. 1145, n. 54; p. 1146, n. 57; p. 1148,
n. 72; p. 1150, n. 91; p. 1169, n. 15; p. 1170, n. 23.

*Appeal from District Court, Lewis and Clark County;
A. J. Horsky,* Judge.

ACTION by E. A. Hale against J. Miller Smith, executor, and
others. Judgment for defendants and plaintiff appeals. Af-
firmed.

*Messrs. Spaulding & McConnell* for Appellant, submitted a
brief; *Mr. C. A. Spaulding* argued the cause orally.

*Mr. Paul W. Smith* and *Mr. David R. Smith,* for Respond-
ent, submitted a brief; the former argued the cause orally.

MR. JUSTICE GALEN delivered the opinion of the court.

Robert S. Hale, a pioneer resident and citizen of Montana,
died in San Diego, California, July 31, 1922, at an age of
over eighty-five years. He left considerable estate in Mon-
tana, and none but collateral heirs surviving him. He was an
old bachelor, and a unique and positive character. He was
set in his ways and strong-minded in all business and social
relations with mankind. It was not easy for anyone to in-

2. See 28 R. C. L. 144.

fluence him respecting his decision in any matter, and up to the time of his death his mentality was unusually strong and vigorous for a man of his years. He left his home in Helena about December 13, 1920, and went to San Diego, California, for a rest in consequence of his advanced years and failing health. On December 10, 1920, before leaving for California, he executed his last will and testament, which, after his death, was regularly admitted to probate in the district court of Lewis and Clark county on August 19, 1922.

On August 18, 1923, the appellant, E. A. Hale, a nephew of the testator, by contest filed, sought to set aside the will and have it. declared null and void, because of alleged undue influence exercised upon the mind of the testator by his niece, Lutie Gibson White, at the time the will was executed.

In his petition the contestant alleged that at the time of the making of the instrument, and for a long time prior thereto, Lutie Gibson White was assuming to act as the guardian of the deceased, and sustained close relations of confidence and trust towards him, and that, taking advantage of such relationship, she exercised undue influence upon him, and induced him to execute and sign the will presented for probate, by the terms of which practically all of his property was left to Lutie Gibson White and her sister, Sue Gibson, for life, and to such heirs as might survive them or either of them; that no provision whatsoever was made for the contestant, other than a bequest of the sum of $500, and in addition a possible residuary interest in the estate; that for a number of years immediately preceding the execution of the will Lutie Gibson White was in constant attendance upon the testator, was supported by him, and exercised complete supervision and control over all of his conduct, acts and affairs; that she occupied adjoining rooms to those of the deceased at a hotel in the city of Helena, and would not and did not permit any of his other relatives to communicate with or see him without being present

at such interviews; that she so worked upon the sensibilities and fears of the deceased during his lifetime, and so unduly influenced and constrained him for the purpose of securing to herself and her sister, Sue Gibson, the use and benefit of the principal property of the deceased, that he executed the will which was admitted to probate as his last will and testament.

After the admission of the will to probate, J. Miller Smith and Jess C. Ricker, who were named in the will as joint executors thereof, were regularly appointed as executors, and duly qualified on August 21, 1922. Jess C. Ricker having died, separate answers were filed to the petition of the contestant by J. Miller Smith as surviving executor, and jointly by Lutie Gibson White, Sue Gibson and Robert H. Rogers, three of the heirs of the testator and beneficiaries under the will.

Issue being joined, the matter was regularly brought on for hearing, and heard before Judge Antone J. Horsky, sitting without a jury; the only question presented for determination being as to the alleged undue influence exercised upon the mind of the testator at the time of the execution of the will by his niece Lutie Gibson White. After submission of all the evidence and conclusion of the hearing, the court made its findings of fact and conclusions of law, sustaining and upholding the will, upon which judgment was duly entered. The appeal is from the judgment.

The court found that no undue influence was exercised upon the testator in the making and execution of his last will and testament; that his free agency was not destroyed in the making and execution thereof; that he was not coerced to make and execute it; that the will admitted to probate was executed by him of his own volition, free from any undue influence of Lutie Gibson White or any other person; and that it constitutes and is the last will and testament of Robert S. Hale.

The only question raised by the appellant's assignments of error is whether the evidence is sufficient to support the findings of fact made by the court. Necessarily we have had to carefully review and consider the entire record; for, in order to justify a reversal, it must appear that the evidence preponderates against the findings.

It appears that Lutie Gibson White, ever since the death of her husband in 1907, has been a widow, and before coming to Montana to take up her residence with the testator, October 15, 1913, lived at Plattsburg, Missouri, where she earned a livelihood by teaching music. She is now sixty years of age, and for nine years prior to Mr. Hale's death lived with him, sustaining the intimate relation of housekeeper, nurse, cook and secretary. In consequence, their relationship was most intimate. That her task in caring for the deceased was a most difficult one is shown by the record, and is readily realized and appreciated from human experience in caring for either old men or old women; and more particularly so in the instant case, as the testator was eccentric, and had throughout his life, and until Mrs. White came to him, lived as an old bachelor and rather a recluse. She was a daughter of a favorite sister of the testator, and from her early childhood had learned to look upon the deceased as her father, and was treated by him with the same consideration and respect as though she were his own daughter. Her own father died when she was quite young, leaving her mother, with six children, in straitened financial circumstances. Thereafter the deceased greatly helped and assisted her mother during the latter's lifetime in caring for the children, purchased a home for her, and at his expense educated both Lutie White and her sister, Sue Gibson. During the early childhood of these girls, prior to their mother's death, he made frequent visits to their household, and from the evidence it would appear that Mrs. White and her sister, Sue, evinced more real gratitude and consideration for the

testator than any of his other relatives. Under all of the circumstances it is not at all strange that the testator should have made Lutie Gibson White the chief object of his bounty. Indeed, it would be passing strange, under the facts disclosed by the record, had he done otherwise.

An extended recital of the testimony would serve no useful purpose here. Suffice it to say, the evidence conclusively shows the testamentary capacity of the testator at the time of the execution of the will, and that in making it he was wholly free from the undue influence of any person whomsoever. From a careful examination and consideration of all of the evidence in this case, the utmost to be deduced therefrom is that Lutie Gibson White occupied such a confidential relation to the testator as would afford her opportunity to unduly influence the testator in the execution of the will, provided she was so disposed and the testator was susceptible thereto.

"Undue influence consists: (1) In the use, by one in whom [1] a confidence is reposed by another, or who holds a real or apparent authority over him, of such confidence or authority for the purpose of obtaining an unfair advantage over him; (2) in taking an unfair advantage of another's weakness of mind; or (3) in taking a grossly oppressive and unfair advantage of another's necessities or distress." (Sec. 7483, Rev. Codes 1921.)

The general principles applicable are stated by the authorities substantially as follows: "Undue influence, such as will invalidate a will, is not easy to define with precision. It must be such as to control the mental operations of the testator, overcome his power of resistance, and oblige him to adopt the will of another; thus producing a disposition of property which the testator would not have made if left freely to act in accordance with his own pleasure. The means of control are not important, and may consist of force or coercion, violence or threatened violence, or moral coercion.

[73 Mont. 481.]

❋ ⋅ ❋ ❋ The extent or degree of the influence is wholly immaterial if sufficient to make the act in question the act of another rather than the expression of the mind and heart of the actor. But to destroy the validity of a will, the undue influence must be specially directed on the testamentary act, so that its effect may be registered there, and must be sufficient to destroy the free agency of the testator, and control the disposition of his property under the will.'' (28 R. C. L. 137.)

It ''imposes a restraint on the will of the testator, who, but for the restraint, would be free and responsible, so that his testamentary act is not the result of his own volition, but of the will of another.'' (*In re Murphy's Estate,* 43 Mont. 353, Ann. Cas. 1912C, 380, 116 Pac. 1004.)

''The theory underlying the doctrine of undue influence is that the testator is induced, by the means employed, to execute an instrument in form and appearance his will, but in reality expressing testamentary dispositions which he would not have voluntarily made. (40 Cyc. 1146; Page on Wills, sec. 126, p. 145.) To defeat a will the undue influence must have been directed toward the particular testamentary act and at the time thereof, or so near thereto as to be operative. (40 Cyc. 1145; Page on Wills, sec. 130, p. 151.)'' *Murphy* v. *Nett,* 47 Mont. 38, 130 Pac. 451.)

In order to nullify a will, there must be more than influence; undue influence must be shown to have been exercised. Influence becomes undue only when it overcomes the will of the testator, so that his free agency is destroyed. In effect, it amounts to the substitution of the will of another for that of the testator. Mere suspicion that undue influence was brought to bear is not sufficient to justify setting aside a will. ''It is not enough to show that the defendant had an opportunity to exercise such influence, but it must also appear that the influence was actually exercised, and not only so, but that it was pushed to such an extent that the resultant

will was not that of the testator, but that of the parties procuring its execution." (*In re Pittock's Will, Leadbetter* v. *Price*, 102 Or. 159, 174, 17 A. L. R. 218, 199 Pac. 633, 637.)

The influence exerted must consist of some act or power [2] exercised over the mind of the testator, sufficient to destroy his free agency at the time of the execution of a will, so that in effect the will of another is thereby substituted for that of the testator. It is not sufficient that the testator may have been influenced by the beneficiary in consequence of their fiduciary relationship in the ordinary affairs of life or that he lived with the beneficiary at the time of the execution of the will, in consequence of which she may have had better opportunity than others to ingratiate herself with him. Mere general influence in the affairs of life or method of living at the time of the execution of a will by a testator is not proof of undue influence in the contemplation of our statute, and, in order to establish it as a fact, it must be shown by proof that it was exercised upon the mind of the testator directly to procure the execution of the will. Mere suspicion that undue influence may have or could have been brought to bear is not sufficient. It is never presumed, and must be proven like any other fact. The burden of proving it rests upon the contestant.

The courts are unanimous in holding that suspicion, conjecture, possibility or guess that undue influence or fraud has been exercised is not sufficient, and "it is well settled that mere possession of influence, and the opportunity and motive to exercise it, are not sufficient." (*In re Hegarty's Estate*, 46 Nev. 321, 212 Pac. 1040.)

"Lawful influence, such as that arising from legitimate family and social relations, must be allowed to produce its natural results, even in influencing last wills. * * * It is only when such influence is unduly exerted over the very

act of devising, so as to prevent the will from being truly the act of the testator, that the law condemns it as a vicious element of the testamentary act.'' (*Dean* v. *Negley,* 41 Pa. 312, 80 Am. Dec. 620; *Ginter* v. *Ginter,* 79 Kan. 721, 22 L. R. A. (n. s.) 1024, 101 Pac. 634; *Higbee* v. *Bloom,* 108 Kan. 723, 196 Pac. 1080.) It must be such influence as to amount to coercion, destroying the free agency of the testator at the time of the execution of his will.

The rule is universal that the courts must refuse to set aside the solemnly executed will of a deceased person upon the ground of undue influence, unless there be proof of a pressure which overpowered the mind and bore down the volition of the testator at the time the will was made. (*In re Hodgdon's Estate,* 23 Cal. App. 415, 138 Pac. 111.)

The most that can be said of the evidence in the instant [3] case is that it shows opportunity on the part of Lutie Gibson White to exercise undue influence in the execution of the will, and that she might have done so if she were so disposed, and had been possessed of sufficient influence. This, however, is not sufficient. Undue influence must be shown to have actually existed and been exercised, so as to affect the terms of the will. There is no substantial evidence in support of either of these conditions. (*In re Hegarty's Estate, supra.*)

Courts have neither the right nor power to reframe the wills of decedents, nor to overthrow the expressed intent therein contained, in the absence of direct and substantial proof sufficient to bring the case within the well-established rules of law regarding undue influence.

Viewing all of the evidence in aspect most favorable to the contestant, there is absolutely no proof that undue influence was exercised upon the mind of the testator in the execution of the will. Findings of fact contrary to those

made by the court would not have been justified. The judgment is affirmed.

*Affirmed.*

ASSOCIATE JUSTICES HOLLOWAY, STARK and MATTHEWS concur.

MR. CHIEF JUSTICE CALLAWAY, being absent on account of illness, did not hear the argument and takes no part in the foregoing decision.