IN RE BRIGHT'S ESTATE. WILLIARD ET AL., APPELLANTS, *v.* BRIGHT, EXECUTOR, ET AL., RESPONDENTS.

(No. 6,792.)

(Submitted March 10, 1931. Decided April 1, 1931.)

[300 Pac. 229.]

396

*Mr. E. K. Cheadle* and *Mr. Raymond E. Dockery,* for Appellants, submitted a brief; *Mr. Cheadle* argued the cause orally.

*Mr. William M. Blackford* and *Messrs. Ayers & Ayers,* for Respondents, submitted a brief; *Mr. Blackford* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Contest, and action for revocation of probate, of the will of Georgana Bright, by Harry Williard, Arthur H. Smurr and Georgia Cochran against Walter S. Bright and Flora Adele Langdon. Appeal from a judgment sustaining the validity of the will and its probate. Affirmed.

Georgana Bright, a widow of considerable means, suffered a paralytic stroke in 1926 which partially incapacitated her, physically at least, and was thereafter constantly cared for by Flora Adele Langdon, a paid attendant. In April, 1928, Mrs. Bright made a will by which, among other bequests, she left $5,000 to Miss Langdon and made Walter S. Bright, a nephew of her deceased husband, her residuary legatee. She named Bright as executor and Miss Langdon as executrix.

In November, 1928, Mrs. Bright suffered a hip fracture and died February 25, 1929. The will was duly admitted to probate and the executor and executrix named duly qualified; whereupon these contestants filed their petition for the revocation of the probate of the will, setting up two grounds of contest by separate counts: first, that at the time the will was executed, Mrs. Bright was incompetent mentally, and, second, that the disposition of her property resulted from the exercise of undue influence over her by Bright and Miss Langdon. Issue was joined and trial had to the court and a jury. On the evidence adduced, the jury made special findings in favor of the contestees, which findings were adopted by the court, and judgment thereon was entered sustaining the probate of the will. Contestants have appealed from the judgment.

1. The first assignment of error is predicated on the admission in evidence, over objection, of the testimony of Frances Goozee, a nurse who attended Mrs. Bright from the time she broke her hip until her death, as to the condition of the mind of testatrix during that period. The objection was twofold: (a) that the testimony, relating to a time subsequent to the execution of the will, was incompetent, and (b) that the witness was not qualified to testify as an expert.

(a) The evidence was offered in rebuttal of numerous declarations made by witnesses in support of contestants' allegation, denied by contestees, that for two and a half years or more, prior to her death, Mrs. Bright was "mentally unable to understand or transact her ordinary business affairs," and in that condition was unduly influenced by these contestees, and further numerous statements that during all of that period she was mentally incompetent to make a will. The testimony was clearly admissible.

(b) While opposing counsel and the court insisted upon the attempted qualification of the witness as an expert, counsel for contestees specifically disclaimed an intention to offer her as such, and stated to the court and jury that he went into her previous experience "as a supplement to what she

personally knew." In so far as the attempted qualification tended to show a haziness in the mind of the witness as to what cases should be classified as psychopathic, it would affect the weight to be given to her testimony but not its admissibility; this was a question for the jury, not the court. (*In re Murphy's Estate,* 43 Mont. 353, Ann. Cas. 1912C, 380, 116 Pac. 1004.)

An intimate acquaintanceship between a layman and a person whose mental condition is challenged entitles the layman, after giving his or her reason therefor, to express his or her opinion on the subject. Here the necessary qualification consists in showing "intimate acquaintanceship" (sec. 10531, subd. 10, Rev. Codes 1921; *State* v. *Penna,* 35 Mont. 535, 90 Pac. 787; *State* v. *Leakey,* 44 Mont. 354, 120 Pac. 234; *State* v. *Davis,* 60 Mont. 426, 199 Pac. 421), and a nurse who has been in constant attendance upon a patient for a considerable period of time comes within the "intimate acquaintance" rule. (14 Cal. Jur. 372; *Estate of Huston,* 163 Cal. 166, 124 Pac. 852.) The admission of this testimony was proper.

2. The second specification is that the court erred in refusing to admit in evidence a letter written by strangers to the proceeding to Williard and his answer thereto, back in 1923, concerning a business deal in which Walter Bright and the witness, Williard, were interested but which had nothing to do with the Bright estate. Cross-examination having developed unfriendliness between these two, Williard was permitted to explain that his feeling resulted from his reaction to the contents of the letter received and to explain the nature of the business transaction, but the court properly excluded the letters on the theory that the jury was not called upon to determine the merits of the controversy between the litigants concerning a foreign subject.

3. The court having, without objection, instructed the jury on the subject of undue influence in accordance with the law as declared in *Hale* v. *Smith,* 73 Mont. 481, 237 Pac. 214, refused the following offered instruction:

"To establish undue influence on the part of Walter S. Bright and Flora Adele Langdon over the mind of the said Georgana Bright, and that the signing of the paper in controversy was induced and brought about by such influence, it is not necessary to show that the said Walter S. Bright or Flora Adele Langdon purposely practiced a fraud on the said Georgana Bright, or purposely and intentionally sought to acquire an undue influence over the mind of the said Georgana Bright, but, if you believe from the evidence in the case that an undue influence on the part of the said Walter S. Bright or Flora Adele Langdon, or both of them, did exist over the mind of the said Georgana Bright, and that the signing of the paper in controversy was brought about by the exercise of such undue influence, then you must find a verdict in favor of the contestants and against the validity of the said will, regardless of how such influence was acquired, or the manner in which it was exercised."

Contestants contend that such refusal constituted reversible error.

While the predicate "if you believe from the evidence * * * that an undue influence * * * did exist" may save the offered instruction as a statement of the law, as a whole it is not in harmony with the instructions given and would have been misleading to the jury. An offered instruction inconsistent with one given without objection is properly refused. (*Kamboris* v. *Chicago, M. & St. P. Ry. Co.*, 62 Mont. 88, 203 Pac. 859.)

The court instructed the jury that "lawful influence, such as that arising from legitimate family and social relations, must be allowed to produce its natural results, even to the influencing of last wills. It is only when such influence is unduly exerted over the very act of devising, so as to prevent the will from being truly the act of the testator, that the law condemns it as a vicious element of the testamentary act. It must be such influence as to amount to coercion, destroying the free agency of the testator at the time of the execution of the will." And again, "in order to establish undue influence as

a fact, it must be shown by proof that such undue influence was exercised upon the mind of the testator directly to procure the execution of the will." These instructions, given without objection, became the law of the case. (*Shipler* v. *Potomac Copper Co.,* 69 Mont. 86, 220 Pac. 1097; *Herd* v. *Freeman,* 84 Mont. 32, 273 Pac. 1047.)

Running through these instructions and through all of the definitions of undue influence is the thought of a malign and intentional purpose to override the will of the testator and substitute therefor the will of another,—a thought not present in the offered instruction, except as it may be contained in the predicate reference to a finding of undue influence by reference to other instructions given defining that term.

Again, in contradistinction to the implication contained in the offered instruction: "To defeat a will the undue influence must have been directed toward the particular testamentary act at the time thereof, or so near thereto as to be operative." (*Murphy* v. *Nett,* 47 Mont. 38, 130 Pac. 451; *Hale* v. *Smith,* above.)

A reasonable deduction from the record is that Mrs. Bright was influenced in the disposition of her property by love and affection for Walter S. Bright, and gratitude for services well performed by Miss Langdon, but such influence is not within the rule with respect to undue influence. (*Gordon* v. *Burris,* 153 Mo. 223, 54 S. W. 546; *Barron* v. *Reardon,* 137 Md. 308, 113 Atl. 283; *Hoelscher* v. *Hoelscher,* 322 Ill. 406, 153 N. E. 662; *Talbott* v. *Giltner,* 179 Ky. 571, 200 S. W. 913; *In re Carr's Will,* 121 Or. 574, 256 Pac. 390; *In re Crockett's Will,* 86 Misc. Rep. 631, 149 N. Y. Supp. 477; *Hale* v. *Smith,* above.)

Had the offered instruction been given, the jury might well have presumed therefrom that such influence was sufficient to condemn the will. No error was committed in refusing the instruction.

4. The final specification is that the court erred in making and entering judgment and decree in favor of contestees. The only question here presented is as to whether

or not the record contains substantial evidence to support the judgment. (*In re Bielenberg's Estate,* 86 Mont. 521, 284 Pac. 546; *Wendel* v. *Metropolitan Life Ins. Co.,* 83 Mont. 252, 272 Pac. 245.)

There is no necessity for quoting from the record; suffice it to say that there was abundant evidence to the effect that, while Mrs. Bright's stroke affected her physical ability, it did not impair her mentality; that her mind was such as not to be overridden by the will of another; that she had a great affection for Walter S. Bright, overshadowing that which she held for any of her blood relations, and was grateful to Miss Langdon for long and faithful service. The evidence warranted the conclusion that the will was executed in accordance with testatrix's own desires, emanating from a sound mind and was not the result of undue influence exerted or exercised by anyone.

As the judgment is amply supported by substantial and credible evidence, it cannot be disturbed. (*In re Bielenberg's Estate,* above.)

Judgment affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and ANGSTMAN concur.