Howard *et al.*
*vs*
Coke *et al.*

---

# Howard, *et al. vs* Coke, *et al.*

### APPEAL FROM THE LOUISVILLE CHANCERY COURT.

*Will case. Charging the jury. Instructions. Witness.*

CHANCERY.   7m 655 †101 75

*Case* 157.

JUDGE SIMPSON delivered the opinion of the Court.

October 5.

THIS is a controversy about the validity of the will of Polly Bullitt, deceased. The will is assailed on two grounds : First, a deficiency of understanding on the part of the testatrix; and Secondly, that its execution was procured by the exercise of undue and improper influence.

The grounds on which the will is assailed.

The record contains a large mass of evidence, both in support of, and against the will. The main questions presented for the consideration of this Court, are, the correctness of the instructions to the jury on the law of the case, and the right of the Chancellor to charge the jury on the evidence.

The complainants moved for the following instructions: .

1st. That a person making a will must posses a sound mind, that is, common sense; which is adequate reason and judgment upon ordinary subjects like other rational men.

Instructions moved in the Chancery Court by complainant.

2ndly. That a person making a will must possess capacity to manage and attend to the ordinary affairs of life.

The Court declined giving them, and in lieu thereof, gave the following:

1st. That though Polly Bullitt, the testatrix, may not have been an idiot, in the strict legal sense of the term, yet she must have had intelligence competent to the understanding and making this will.

Instructions given by the Chancellor.

2nd. That if she knew she had property, its uses and value, and that it was in her power to dispose of it as she

pleased, knew who were her near relations, to whom her property would go at her death, if not disposed of by her; knew that if she died intestate, her property would go in one way, and that it was in her power by making a will, to cause it to go in another way; was capable of forming partialities and preferences among her relations, for reasons that would influence most rational persons, and select among them for like reasons, the objects of her bounty, and had the desire and matured determination, from her own free volition to make a will, for the purpose of giving her property to these devisees, to the exclusion of her other relations, then we are bound to infer that she must have had the competent legal capacity to make this will, though she may not have been competent to have advantageously trafficked with her property, or properly to have managed it without the assistance of others. But though the jury should believe that she possessed the amount of mental capacity here indicated as sufficient to make this will, yet if they believe she was of very weak mind, liable to be imposed upon and influenced by others, then they should give a jealous scrutiny to the facts in proof, to see that the will was not obtained by any undue or improper influence, exercised at the time of its execution, and that the desire to make such a will was not the mere result of such influence theretofore exercised. That the burthen of proof of such influence and its exercise, rests upon the complainants who assert and rely upon it.

The complainants also asked the following additional instructions:

Further instructions asked by the complainant.

1st. If the jury believe from the evidence, that Polly Bullitt was an idiot from her birth, then she had not a right to make a will, however wise its provisions might appear.

2d. That if from her birth, the jury find that said Polly, from defect of reason, was not capable, under the best instructions, of learning how to read, and to count, and to knit, and to sew, and to write, and to take decent care of her person; and if they find that for defect of reason she was not capable of doing any one of these things, then they should find her to be an idiot from her birth.

3d. If they find from the evidence, that Polly Bullitt was incapable of learning either to read or to write, to sew, to knit or to count; and in addition thereto, that she was unable, from defect of reason, to take care of herself; and that she was never able to acquire the amount of reason usual among girls of ordinary minds of twelve years of age, then they ought to find for the complainants.

4th. If the jury believe from the evidence, that the testatrix was incapable of acquiring, by conversation and instruction, a competent share of understanding to enable her to govern her estate and take care of her person with reason, then they ought to find that her mind was not sound.

5th. If they find that she was not capable, for defect of understanding, of acquiring by conversation and instruction, the amount of knowledge usually possessed by a child of ten years of age, then they ought to find that she was not competent to make a will.

6th. That a person who advances to the age of thirty four years without possessing or being able to acquire as much mind as an ordinary child of seven years of age, is not, in legal contemplation, of sound mind.

The Court gave the first and sixth and overruled the others.

The instruction given to the jury by the Chancellor is liable to the following objection: It is based upon the knowledge of certain facts, without discriminating as it should have done, between such knowledge, as the mere effort of memory alone, or as the exercise of reason. The things enumerated in the instruction should not only have been known, but they should have been known and comprehended. Certain facts may be impressed upon the memory and desires created, where a very slight degree of intellect exists. A child of three or four years of age may be taught a great many things more than it can comprehend; it may know them, but not understandingly. So in this instance, the testatrix may have had knowledge of these facts, by having heard them frequently alluded to, and still may not have had intellect enough to understand them. And in addition to the facts enu-

*Instructions given on the trial of an issue of competency or incompetency to make a will, should not restrict the jury to inquiries involving memory alone, and not reason and a knowledge of the natural obligation to relatives.*

merated in the instruction, a knowledge of her natural obligations to her other relations should have existed. She may have known her near relations, and yet may not have comprehended the duty resulting from that relationship.

It is not proper in such cases to group a set of facts together, and say their existence or nonexistence is conclusive of capacity or incapacity; the jury should be left to weigh all the facts proved, which bear upon the question of capacity.

We are also of opinion that it was improper to select a group of facts on either side as conclusive evidence of capacity or incapacity to make this will. The facts enumerated in the instruction given, and in those asked upon the other side, are evidence on the one side of sufficient capacity, and on the other of the absence of such capacity. The question of capacity must, however, at last be determined by weighing and considering all the facts proved which bear upon it. The instruction as given, and the second and third instruction moved for by the complainants and overruled, are all liable to the objection, that they make the facts upon which they are predicated, conclusive of the question at issue.

It is not requisite that a testator should have that strength of mind to authorize him to make a will as is necessary to traffic with and manage property advantageously.

The Chancellor was correct in his decision that it did not require as much capacity to make a will, as was necessary to traffick in property, or to manage it advantageously. In dealing with others, a person of weak understanding is subjected to the influence of the cunning and adroit representations that may be made use of, for the purpose of accomplishing the end desired. In making a will, such person, in the absence of all improper influences, has only to consult his or her own judgment and inclinations, and follow out their promptings; which evidently requires less capacity than is necessary to the successful management of an estate, or even its management with reason and discretion.

These suggestions are deemed sufficient to determine the propriety of giving or refusing any of the instructions that were moved for, without subjecting each instruction separately to a critical examination.

The Judges in Kentucky have not the right to charge the jury upon the facts, as was the case in England. It

After the argument of counsel was concluded, the Chancellor charged the jury upon the evidence. The charge is contained in the record, and is in effect, an argument in favor of the validity of the will. The jury were, however, explicitly informed of the distinction be-

tween an instruction on the law of the case which they were bound by, and a charge by the Chancellor, to which they might give just such consideration as they deemed proper.  We do not deem it necessary to decide whether the charge in this instance would exceed the bounds of propriety, if a charge from the bench to a jury on the evidence, be authorized by law.  Such a right exists in England and in some of our sister States.  It has never, however, been exercised in this State, and if the non-existence of a right is at all inferrable from the fact that it has never been assumed or used, the custom in this State on this subject, must be deemed conclusive against the existence of the right.  By general consent and common understanding of what the law is, a different usage has prevailed.  In civil cases the law is decided by the Judge, the facts of the case being left exclusively to the decision of the jury, unbiassed by the influence of the Court or any judicial suggestion.  This distinction between the province of the Judge and the jury, has not only been established in the Circuit Courts, but has indirectly been sanctioned by its recognition in numerous cases in this Court.  Any encroachments by the Judge upon the province of the jury, is regarded with jealous suspicion, not it is true, by the jury themselves, who in doubtful cases, would willingly receive an intimation from the Court as to its opinion on the facts, but by the parties whose rights may be affected by such interference.  As a mere question of expediency, much may be urged on both sides.  In this aspect of the question, however, it is one for legislative and not judicial action.  If the system which has prevailed since our Commonwealth has had an existance, and which must now be regarded as the law of the land, is considered defective—if the exercise of the right by the Judge to charge the jury be deemed necessary to the perfection of this mode of trial, and called for by the delays and imperfections which are supposed to be incident to it in its present form, the power to effect the change is not in the Courts, but in another department of the government, whose duty it is to provide a remedy for the evil, if one exist.

The case of *Ray.* vs *Woods,* (2 *B. Monroe,*) cited. The Court say the question is there left open..

The case of *Ray* vs *Woods,* (2 *B. Monroe,* 229,) has been referred to as deciding the right of the Judges to charge the jury on the facts of the case. The question is there left open, the Court merely deciding that if the power should be exercised, and nothing was contained in the charge calculated to mislead the jury or to divert their attention from the issue, or the facts to be found by them bearing upon the issue, the verdict for this cause, should not be set aside. In that case the Circuit Judge had stated to the jury that in making up their verdict, certain circumstances should be taken into consideration by them. It was in effect, deciding that those circumstances were evidence which they had a right to consider. Whether evidence or not, was a question of law which the Court had to determine, and the statement of the Judge to the jury might have been sanctioned upon that principle. We do not regard that case as settling the question; and looking to the custom that has universally prevailed in this State to the contrary, and the difficulties that would ensue from allowing the exercise of this power in the restricted form suggested in the case of *Ray* vs *Woods,* when every charge would be subject to revision by this Court, we have come to the conclusion the power does not exist in the Judge, and cannot be exercised by him to any extent.

The guardian of a testatrix held to be a competent witness to prove her capacity to make a will.

James Guthrie, who had acted as the guardian and agent of the testatrix, was introduced as a witness in support of the will, and his testimony objected to on the ground that he was interested in establishing the capacity of the testatrix; that his liability might be greater if she were determined to be of unsound mind and unable to have authorized or ratified any of his acts, or to have constituted him her agent, than if the converse of the proposition were true. This objection was overruled, and we think properly. His interest, if any, being remote and contingent, it went to his credibility only, and not to his competency.

But for the error in the instruction given to the jury, and the unauthorized assumption of power by the Chancellor in commenting upon the evidence, the decree is reversed and cause remanded, that a new trial may be

granted, and for further proceedings consistent with this opinion.

*Clay, Duncan, Fry & Page and Bullitt* for appellants; *Pirtle and Thruston* for appellees.