## O. M. COCKRUM COMPANY *v.* KLEIN.

[No. 20,539. Filed May 23, 1905. Rehearing denied December 12, 1905.]

1. TRIAL.—*Interrogatories to Jury.—What Facts May Be Called for.—Statutes.*—In an action on an account for goods sold and delivered where the real issue is the identity of the purchaser, it is not proper to interrogate the jury as to whether the goods were ordered otherwise than by letters signed by C. in his individual name, and if any were ordered otherwise, how and by whom they were ordered, §555 Burns 1901, Acts 1897, p. 128, permitting only substantive and not evidentiary facts to be called for in such answers. p. 628.

2. SALES.—*Principal and Agent.—Undisclosed Principal.*—The fact that a person orders goods over his individual signature is not conclusive that he is the principal, but it may be shown that another was the real purchaser. p. 631.

3. SAME.—*Principal and Agent.—Corporations.—Questions for Jury.*—Where the insolvent president and general manager of a wholesale and retail mercantile corporation inquired by a corporate letter to plaintiff the price of goods, and afterwards placed two orders by individually signed letters, which orders were filled supposedly for such corporation, whether such corporation was the real purchaser was a question for the jury. p. 631.

From Gibson Circuit Court; *O. M. Welborn*, Judge.

Action by Philip Klein against the O. M. Cockrum Company. From a judgment for plaintiff, defendant appeals. Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590. *Affirmed.*

*Lucius C. Embree* and *Luther Benson,* for appellant.
*Louis T. Shanner, Thomas Duncan* and *Logsdon, Chappell & Veneman,* for appellee.

HADLEY, J.—This action was instituted by appellee to recover the price of some barrels and head-liners alleged to have been sold by him to appellant. The complaint is on an account in the usual form. There are three answers: first, the general denial; the second alleges payment; and the third sets up that appellee accepted the note of O. M. Cockrum in payment. Reply by denial. There was a trial by jury, and a verdict and judgment for appellee for full price of the goods. The overruling of appellant's motion for a new trial presents the only questions for decision.

Among the reasons for a new trial was the refusal of the court to submit to the jury two interrogatories which follow: "(1)  Were any of the barrels ordered from the plaintiff otherwise than by letters written by O. M. Cockrum, and signed with his individual name?  (2)  If you answer the next preceding interrogatory in the affirmative, state how and by whom they were ordered."  It was not questioned that the plaintiff had sold and shipped to somebody the goods sued for. Nor was it questioned that the goods were ordered by O. M. Cockrum. But the real controversy was whether the sale was to O. M. Cockrum Company (appellant), or to O. M. Cockrum. The latter being the active president and general manager of the company that bore his name. It is therefore manifest that, if the jury had answered that all the barrels ordered from the plaintiff were ordered by letters written and signed by O. M. Cockrum in his individual name, the finding would

have amounted to nothing more than an evidentiary fact that the order and sale were on his account, rather than on the account of the O. M. Cockrum Company. It is well settled that under §555 Burns 1901, Acts 1897, p. 128, it is not proper to submit interrogatories to the jury calling for a finding upon some items of evidence. Such a course would place it within the power of the court, upon the request of either party, to require the jury to return with their verdict a full statement of the evidence. "What the statute declares and intends is, that the jury may be required to find material and substantive facts." *Louisville, etc., R. Co.* v. *Hubbard* (1888), 116 Ind. 193, 196; *Louisville, etc., R. Co.* v. *Cauley* (1889), 119 Ind. 142; *Gates* v. *Scott* (1890), 123 Ind. 459. The court did not err in refusing to submit the above interrogatories to the jury.

The only other question argued in this court is that the verdict is not sustained by the evidence and is contrary to law. It appears from the evidence that a corporation known as the O. M. Cockrum Company was organized under the laws of this State for the purpose of "keeping a general store in the town of Oakland City, Gibson county, Indiana, and buying, keeping and selling at wholesale and retail all goods, wares and general merchandise," and it had for several years been doing business in Oakland City, chiefly as retail grocer. O. M. Cockrum was the president and active general manager of the concern, and the other stockholders were his mother, his wife, his sister and his son, fourteen years of age at the time of trial, all residents of the town. The plaintiff, a manufacturing cooper, resided and did business in Evansville, about twenty miles distant. O. M. Cockrum had for six or eight seasons bought and sold apples on his own account, and had, the season before, ordered barrels from the plaintiff in his individual name, but it does not appear that the plaintiff knew or should have known that he was trading on his separate account. The

plaintiff testified that he was acquainted with the O. M. Cockrum Company, had at different times visited its place of business, and knew that O. M. Cockrum had charge of and transacted its business, and knew also from general report that the corporation was solvent, and O. M. Cockrum was insolvent. In the early part of September, 1902, O. M. Cockrum telephoned the plaintiff and inquired the price of barrels, to which inquiry the plaintiff replied that he would quote him prices by letter. The plaintiff promptly wrote and quoted barrels at thirty cents each, in reply to which letter the plaintiff received through the mail the following letter: "O. M. Cockrum Company, Grocers. Oakland City, Indiana, September 11, 1902. Mr. Philip Klein. Dear Sir: Yours of to-day received. Am sorry you can not make the bbl. for less than that. We can get them in Princeton for twenty-six cents, and we will use about 5,000, and the difference is quite an item. But please ship us to Princeton 5,000 head-liners, ship the same to me at Princeton, Indiana. Yours, O. M. Cockrum Co."

The 5,000 head-liners were shipped as ordered on the next day, and on same day an additional 2,000 were shipped to Cockrum at Oakland City. The price of the head-liners was $1 per thousand. On September 24 plaintiff received another letter from Cockrum, ordering 1,000 barrels to be sent to Oakland City, which letter had been destroyed by fire, along with the other effects of his office, and which was written on the company's letter-head, but witness thought it was signed "O. M. Cockrum." The 1,000 barrels were shipped as ordered, at the agreed price of thirty cents each, and early in October plaintiff made another shipment of 500 barrels, in response to, and in accordance with, the following letter: "O. M. Cockrum Co., Grocers. Oakland City, Indiana, October 4, 1902. Mr. Philip Klein. Dear Sir: Please send me a car-load of apple bbls. to Princeton, Indiana. I am going to Chicago to-day and will send you a check for my other bbls. Wednesday. Please ship the bbls.

Tuesday so I can get them Wednesday morning. Please send the bill to me at Princeton Hotel. Yours, O. M. Cockrum."

None of the goods shipped by plaintiff were paid for. In all the transactions the plaintiff believed he was dealing with the company, and not with Cockrum individually. On the other hand, O. M. Cockrum testified that the goods were all ordered, received and used by him on his own account, and that the company had no interest in, and received no benefit from, the purchases, and in explanation of how he came to use the plural pronouns in his letter of September 11, and why he signed the same letter "O. M. Cockrum Co.," said that it was an inadvertence, caused, he supposed, by the habit he had formed in writing and signing letters for the company.

The main question before the jury was the identity of the purchaser. It is not essential to a valid sale that it should be consummated in the name of the real purchaser. If the purchaser is sued for the price, and his identity is made out, the contract is not changed by its appearing to have been made by him in the name of another. So, under other facts of this case, if the two barrel orders were made over the signature of O. M. Cockrum, that was by no means conclusive that the sales were made to him.

There were a number of things in evidence that the jury had the right to consider in arriving at their verdict. The declared scope of the purpose of the corporation to buy and sell, at wholesale and retail, all kinds of general merchandise; the incorporators and stockholders, namely, O. M. Cockrum, his mother, wife, sister and fourteen-year-old son; the knowledge of the plaintiff that Cockrum not only did in fact, but as general manager was authorized, to transact all the business of the concern; in whose behalf the original inquiry was made of plaintiff for the price of the barrels; the contents of the letter of Sep-

tember 11; and if, upon consideration of all the facts and circumstances connected with the transactions, the jury was convinced by a preponderance of the evidence that O. M. Cockrum, while acting within the real and apparent scope of his authority as general agent of appellant company, did, by letter or other means, mislead and induce the plaintiff to sell and ship the goods, honestly and in good faith believing that he was selling and shipping them to the appellant company, then the appellant was liable for the price, and the jury was justified in returning the verdict it did. "If within these limits [business confided to him] the agent has committed a fraud or other injury upon a third party, * * * whether it was for the benefit of the agent or of the principal, the principal is liable to such third party, if the latter dealt with the agent in good faith." Reinhard, Agency, §344. For general principles see *Wolfe* v. *Pugh* (1885), 101 Ind. 293, 304.

It is not questioned that the purchase of barrels for the shipment of apples was within the corporate powers of the company, and Cockrum's authority to make any purchase within the limits of the business is conceded. That he meant to cause the plaintiff to believe that it was the company in the market for barrels is too plain for argument. Otherwise, why should he, in the introductory stage of the business, write the plaintiff in the company's name, as if it were the company speaking, and say: *"We"* can buy barrels cheaper in Princeton. *"We* [Whom did he mean?] will use about 5,000" barrels. "But please ship *us"* 5,000 head-liners. This letter, associated with Cockrum's insolvency, which was known to the plaintiff, removes reasonable doubt that he intended the plaintiff to understand that it was the company, and not himself individually, that was engaged in the apple business, and would, during the season, use 5,000 barrels. The order was: "Ship us" (the company) head-liners, and why was the company buying head-liners if it were not engaged in the barreling of apples?

As before stated, the subsequent orders for barrels by Cockrum over his personal signature were not conclusive that the sales were made to him. When he presented himself to the plaintiff as a purchaser, whether he appeared on behalf of appellant company, of which he was the accredited head, or in his individual capacity, was, under the issues, a question of fact for the jury, to be determined from all the proved facts and circumstances and inferences authorized therefrom.

The jury determined it adversely to appellant, and we have no power and see no cause to disturb it. We find no error. Judgment affirmed.