RAMSEYER, EXECUTOR, ET AL. v. DENNIS.

[No. 22,986. Filed June 8, 1917. Rehearing denied May 31, 1918.]

1. WILLS.—*Action to Contest.*—*Pleading.*—In an action to contest the validity of a will, an allegation of unsoundness of mind in the complaint challenged the testamentary capacity of the testator to make a will. p. 424.

2. WILLS.—*Action to Contest.*—*General Verdict.*—*Finding.*—In an action to contest the validity of a will on the ground of unsoundness of mind of the testator, the general verdict in favor of the plaintiffs amounted to a finding that the testator, on the date of the execution of the will, did not have testamentary capacity. p. 424.

3. WILLS.—*Action to Contest.*—*Jury Questions.*—*Review.*—In an action to contest a will on the ground of unsoundness of mind of the testator, the facts are for the jury, and a question of

law does not arise on the evidence to affect the verdict, unless there is no evidence to sustain an essential element. pp. 425, 429.

4. WILLS.—*Testamentary Capacity.—Evidence.—Admissibility.*— As bearing upon a testator's testamentary capacity, evidence is admissible tending to show: the amount, situation, extent and value of his property; the number and names of those who were the objects of his bounty, their deserts with reference to their conduct and treatment toward him, and his treatment of them; that he could retain in mind such facts, and the manner in which his property was to be distributed long enough to make a valid will; and that he had sufficient capacity to comprehend the nature of the business in which he was engaged. pp. 425, 426, 432.

5. WILLS.—*Testamentary Capacity.*—A testator, to make a valid will, must have been mentally capable of comprehending and understanding his act and all other conditions that would enter into its rational performance, of understanding his choice between one disposition and another, and of comprehending not only the extent of his property and the nature of the claims of those excluded from participating therein, but of forming deliberately an intelligent purpose of excluding them. p. 426.

6. WILLS.—*Testamentary Capacity.*—Unless the mental unsoundness, delusions or monomania of the testator entered into the making of the will, or unless his mental capacity was below the standard fixed by the adjudicated cases, an action to contest on the ground of unsoundness of mind must fail. pp. 426, 430.

7. EVIDENCE.—*Opinion Evidence.—Mental Unsoundness.—Weight.* —In an action to contest a will on the ground of testator's unsoundness of mind, the opinion of a witness as to his mental unsoundness could have no greater weight than the facts upon which it was based. p. 428.

8. APPEAL.—*Review.—Verdict.*—The Supreme Court will not disturb the jury's verdict, where there is some evidence to support it. p. 429.

9. WILLS.—*Contest.—Mental Unsoundness.—Opinion Evidence.—. Review.*—The court on appeal may not reject opinion evidence as to the testator's mental condition, since a witness may draw conclusions from the appearance and acts of the person which cannot be accurately described, though a reliable basis for his opinion. p. 429.

10. WILLS.—*Contest.—Instructions.*—In an action to contest a will, an instruction authorizing recovery for the plaintiffs, if the testator, on the date of the execution of the will, was a person of unsound mind, was harmless where unsoundness of mind was fully defined in other instructions. p. 430.

11. TRIAL.—*Instructions.—Repetition.*—Where the instructions given clearly stated the law as to every feature of the case in a manner not to be misunderstood by any ordinary person, the refusal of other tendered instructions was not erroneous. p. 430.

12. TRIAL.—*Verdict.—Special Interrogatories.*—Section 572 Burns 1914, Acts 1897 p. 198, providing that the jury may be required to find specially upon particular questions of fact, intends that special interrogatories in will contests shall be limited only to findings less than an issue and of greater dignity than evidence, since the inquiry as to a testator's mental capacity covers a wide range, largely within the discretion of the court. p. 432.

13. TRIAL.—*Verdict.—Special Interrogatories.*—In a will contest, special interrogatories calling for specific declarations of the testator made before and after the execution of the will were improper as calling for matters of evidence. p. 433.

14. TRIAL.—*Special Interrogatories.*—In a will contest, it was improper to ask in a special interrogatory whether the testator understood the legal effect of the paper purporting to be his will. p. 433.

15. WILLS.—*Contest.—Interrogatories.—Harmless Error.*—In an action to contest a will on the ground of testator's unsoundness of mind, the submission of improper special interrogatories with those that were proper, was not such error as to mislead the jury, where the answers to all, taken as a whole, showed beyond question testamentary incapacity. p. 433.

16. WILLS.—*Contest.—Evidence.—Admissibility.*—In an action to contest a will on the grounds of the testator's unsoundness of mind, statements of the testator made before and after the execution of the will may be given in evidence by a nonexpert witness as tending to show the testator's mental condition, but not as evidence of the truth of the statements. pp. 434, 435.

17. WILLS.—*Opinion.—Nonexpert.—Mental Condition.*—A nonexpert witness may express his opinion as to the testator's mental condition, after detailing to the jury his personal knowledge of the testator, which may include the latter's gestures, his appearance and conduct, his memory, his conversations and declarations, his business dealings, and any other fact of commission or omission considered by him in forming such opinion. p. 436.

18. EVIDENCE.—*Wills.—Contests. — Evidence. — Admissibility. — Hearsay.*—In an action to contest a will on the ground of testator's unsoundness of mind, the value of the property at the time of the testator's death and an inventory by the executor

Ramseyer, Exr., v. Dennis—187 Ind. 420.

were not relevant, as the value was not in issue, and the inventory was an *ex parte* statement within the hearsay rule.   p. 437.

19. WILLS.—*Contest.*—*Harmless Error.*—*Evidence.*—*Admission.* —Where there was no issue in a will contest as to the value of the testator's property, the admission of improper evidence as to value was not prejudicial.   p. 437.

20. EVIDENCE.—*Admissions.*—*Codefendants.*—In a will contest, the admission of testimony tending to prove admissions of the sole beneficiary after the testator's death and not within the presence of the executor, her codefendant, was not error, since the executor is not to be regarded as taking beneficially but only as accepting duties.   p. 438.

21. EVIDENCE.—*Admissions.*—The admissions of the sole beneficiary under a will are admissible in an action to contest, since they affect her interest only.   p. 438.

22. TRIAL.—*Misconduct of Counsel.*—*Duties of Court.*—In a will contest, if counsel in argument to the jury perverted testimony admitted to show the testator's mental capacity so as to make it appear as evidence of the testator's intention, it was the court's duty, on request, to explain the purpose of the testimony.   p. 439.

23. APPEAL.—*Record.*—*Bill of Exceptions.*—Where the appellant alleges misconduct of appellee's attorney, and the appellee contends that it was invited, the facts in justification should appear in the bill of exceptions, so as to place the reviewing court as nearly as possible in the position of the trial court.   p. 439.

24. APPEAL.—*Preservation of Ground of Review.*—*Misconduct of Counsel.*—Where counsel is guilty of misconduct in argument, to reserve the question for review, the adverse party should promptly object and request an instruction counteracting the effect of the argument and, if sustained and the instruction is insufficient, move to set aside the submission; or promptly object to the improper argument and move to set aside the submission, showing why the error is incurable.   p. 440.

25. TRIAL.—*Improper Argument.*—*Objection.*—*Waiver.*—Though counsel was guilty of misconduct in the argument to the jury, and the opposing counsel objected, and had adverse ruling, and reserved right to move to set aside the submission, but failed to do so, such failure was an admission that there was no sufficient ground to set aside the submission.   p. 440.

From Howard Circuit Court; *W. C. Purdum,* Judge.

Action by Emily Dennis and others against Silas D.

Ramseyer, executor, and others.    From a judgment for plaintiffs, the defendants appeal.    *Affirmed.*

*James C. Blacklidge, Conrad Wolf* and *Earl B. Barnes,* for appellants.

*Morrison, McClure & Roll, McConnell Jenkines, Jenkines & Stuart* and *Beyers & Broo,* for appellees.

MYERS, J.—Appellees brought this action to contest the validity of the alleged last will of William A. Tate, who died on February 8, 1914, leaving appellees and appellant Fannie Kirkendall as his only children, and appellant Gilly A. Tate, his widow.    The will in contest is dated September 19, 1895, and its validity is assailed on the statutory ground of "unsoundness of mind."  §1, Acts 1911 p. 325, §3154 Burns 1914.

A trial by a jury resulted in a verdict in favor of appellees, and over appellants' motion for a new trial the court adjudged the will null and void.    In this court the only error assigned is the overruling of the motion for a new trial.    The reasons in support of the motion most insistently urged are that the verdict is not sustained by sufficient evidence and is contrary to law.

The allegation of "unsoundness of mind" in the complaint challenged the testamentary capacity of the testator to make a will.  *Blough* v. *Parry* 1.   (1896), 144 Ind. 463, 490, 40 N. E. 70, 43 N. E. 560; *Teegarden* v. *Lewis* (1895), 145 Ind. 98, 40 N. E. 1047, 44 N. E. 9; *Wiley* v. *Gordon* (1913), 181 Ind. 252, 104 N. E. 500.

The general verdict in favor of appellees amounted to a finding that William A. Tate, on September 19, 1895, did not have testamentary capacity.  *Warren Construction Co.* v. *Powell* (1909), 173 Ind. 2.   207, 212, 89 N. E. 857; *Indianapolis Traction, etc., Co.* v. *Klentschy* (1906), 167 Ind. 598, 79

N. E. 908, 10 Ann. Cas. 869. At this point, in
3. view of the earnest contention of counsel for ap-
pellant, we are only concerned in being satisfied
that there is some evidence to support the verdict. In
this class of cases the facts are for the jury, and a ques-
tion of law does not arise on the evidence to affect the
verdict, unless there is no evidence to sustain an element
without which the verdict cannot stand. *Republic Iron,
etc., Co.* v. *Berkes* (1903), 162 Ind. 517, 70 N. E. 815;
*Thompson* v. *Beatty* (1908), 171 Ind. 579, 86 N. E. 961.

A careful review of a great number of cases reported
in this, as well as in other jurisdictions, compels the con-
clusion that nearly every will contest case has its dis-
tinctive and often influential features, bearing upon the
ultimate question of testamentary capacity, and for that
reason each case, to a great extent, is controlled by its
own particular facts and circumstances. Usually the
difficulty lies in being able to mark the border between
reason and insanity, or, in other words, to fix the point
where capacity ends and incapacity begins. As said in
*Matter of Carver's Estate* (1893), 3 Misc. Rep. 567, 23
N. Y. Supp. 753: "The law does not, of course, attempt
to define any particular grade of mental ability or acu-
men necessary to qualify one to make a will. Wills are
made by all classes of people in every station of life
and under almost every conceivable set of circumstances,
by persons of weak intellect and by those of magnificent
ability; sometimes in the midst of life and business pros-
perity, at other times in *extremis* or while overwhelmed
with adversity; hence it is impossible to formulate any
precise rules applicable to any particular case." In
*Teegarden* v. *Lewis, supra,* at page 101, this court
4. said: "Testamentary capacity is determined
upon the inquiry: Did the testator possess suf-
ficient strength of mind and memory to know the extent
and value of his property, the number and names of

those who were the natural objects of his bounty, their deserts with reference to their conduct and treatment towards him, their capacity and necessity, and did he have sufficient active memory to retain all these facts in mind long enough to have his will prepared and executed?"

In the case at bar it appears that the testator had four living children by a deceased wife, and one child by his surviving wife. His second wife, Gilly A. Tate, appellant herein, at the time of their marriage, had four children, all now dead except one, and a one-third interest in 160 acres of land, and some other property. For a time after their marriage they lived on that farm, and then moved to a rented farm, and then to an eighty-acre tract, which he bought, and later to a home in Kokomo, all of' which he owned at the time of his death. The Tate children lived at home and worked on the farm as members of the family until they were past twenty-one years of age.

Again referring to the fixed standard of testamentary capacity for will-making purposes, the testator must have been mentally capable of comprehending and understanding his act and all the conditions that would enter into its rational performance, as well as understanding his choice between one disposition and another, and must have had capacity not only of comprehending the extent of his property and the nature of the claims of those whom he excluded from participating in his property, but of deliberately forming an intelligent purpose of excluding them. True, testator may have been mentally unsound. He may have been a person possessed of delusions or monomania, but unless it appears that these or such unsoundness in some manner entered into the making of the will, or that his mental capacity was below the standard fixed by the adjudicated

cases, an action to contest on the ground of unsoundness of mind must fail. *Wiley* v. *Gordon, supra; Burkhart* v. *Gladish* (1890), 123 Ind. 337, 24 N. E. 118; *Humphrey* v. *Mottier* (1911), 48 Ind. App. 469, 96 N. E. 38.

In the case at bar appellants insist that there is no evidence from which the jury could fairly infer that the testator at the time the will was made was of unsound mind within the meaning of the statute. The record shows that sixteen nonexpert witnesses, after testifying to various conversations, business transactions, and describing his appearance, stated that in their opinion William A. Tate, on the date the will was made, was a person of unsound mind. Among the facts—but by no means all—upon which they based their opinion we find the following statements: A few years before the will in contest was executed the testator was exceedingly ill, and thereafter never regained his strength or former appearance. At the time of the execution of the will and afterwards he was not able to work; complained of not being able to sleep; was nervous; would cry without any reason apparent to those about him; had a sad look in his eyes; at times would sit for a considerable time and refuse to talk or answer questions, without any known cause. His talk was disconnected, and he would repeat conversations at short intervals apart to the same party; was emotional, irritable, easily angered; took his daughter to Kokomo and went home without her, and had to be reminded of the fact before remembering that she had gone to town with him; claimed a turkey and hog said not to be his; was three and one-half hours with a scrivener in the preparation of his will, and at no time during its preparation did he mention his daughter Emily or his son Joel. The scrivener who prepared his will was not certain whether he mentioned his sons John and Amos. It

also not only appears in evidence that there was no es-
trangement between the testator and any of his chil-
dren, but that from his conversations both before and
after making his will he seemed to be very appreciative
of them.   He frequently spoke of having made his will,
talked about it, and pretended to state its contents, but
his statements in that respect were not in keeping with
the wording of the instrument.   The will itself, after
the introductory clause, consists of five items, ranging
from nineteen to forty-five words each.   The first item
of the will gives all of his property to his wife; the
second item, to his wife to "be used for her own especial
benefit so long as she shall live"; the third item per-
mits the sale of all personal property "remaining at
my decease and not taken by my wife"; the fourth ap-
points his executor; the fifth is the preamble to the sig-
nature.

The will was introduced in evidence, and the scrivener
testified that he had prepared it from the information
received from the testator.   The will itself bears evi-
dence that at first he wanted his wife to have all
his property, and then only for life; and again, that his
personal property should be sold, except that taken by
the widow.   The fact that the scrivener was three and
one-half hours in determining and preparing the char-
acter of the will desired, together with the finished in-
strument, was before the jury for inference, with other
evidence, however, bearing upon the question at issue.
*Breadheft* v. *Cleveland* (1915), 184 Ind. 130, 108 N. E.
5, 110 N. E. 662.

Appellants insist that the opinion of the witnesses
could have no greater weight than the facts upon which
it was based.   That statement is correct, and
the jury was so instructed, and we may add that
the evidence to support the verdict is weak, but
we cannot say as a matter of law that there is

no evidence or inferences to be drawn therefrom to sustain the verdict. When the question turns on the weight of the evidence, our judgment must give way to that of the jury. *Danville Trust Co.* v. *Barnett* (1915), 184 Ind. 696, 111 N. E. 429; *Bever* v. *Spangler* (1895), 93 Iowa 576, 61 N. W. 1072.

This court has held that we are not at liberty to wholly reject opinion evidence as to the mental condition of the testator at the time of making his will, for the reason that the witness may draw conclusions from the appearance and acts of a person which cannot be fully and accurately described in words but which are nevertheless a reliable basis for his opinion. *Barr* v. *Sumner* (1915), 183 Ind. 402, 411, 107 N. E. 675, 109 N. E. 193. As said in *Connecticut Mutual Life Ins. Co.* v. *Lathrop* (1884), 111 U. S. 612, 619, 4 Sup. Ct. 533, 28 L. Ed. 536: "The extent to which such opinions should influence or control the judgment of the court or jury must depend upon the intelligence of the witness, as manifested by his examination, and upon his opportunities to ascertain all the circumstances that should properly affect any conclusion reached."

After full consideration of the record in this case, we are of the opinion that the question on the evidence of testamentary capacity of William A. Tate, at the time he signed the will in controversy, was for the jury and not a question of law for the court. With these observations it will be sufficient to say that we are not authorized to reverse the judgment on the ground that there is no evidence to support the verdict, or that the verdict is contrary to law.

Appellants claim that instruction No. 8 given to the jury at the request of appellees was erroneous for the reason that it authorized a finding in their favor,

6. if, on the date of the execution of the will, William A. Tate was a person of unsound mind. It is true that any unsoundness of mind may not warrant 10. the setting aside of a will, unless such unsoundness entered into, or affected it. Standing alone, we do not approve this instruction, for the reason that it might have misled the jury, but in connection with other instructions wherein unsoundness of mind was fully defined, it was harmless. *Burkhart* v. *Gladish, supra.*

The action of the court in refusing to give to the jury certain instructions tendered by appellants is also properly presented by the motion for a new trial. 11. The rulings of the trial court in this regard must be sustained. Thirteen of the instructions tendered by appellants were given. These, with others, clearly stated the law as to every feature of the case in a manner not to be misunderstood by any ordinary person.

We are convinced that the specifications presented for our consideration in the motion for a new trial do not show available error, and the judgment is therefore affirmed.

## On Petition for Rehearing.

MYERS, C. J.—On petition for a rehearing appellants have favored us with an earnest and able brief to sustain their views on the questions involved in this appeal. First, our attention is called to matters sought to be presented but not considered in the opinion; secondly, that other questions were erroneously decided. We did omit to notice some of the alleged errors argued by appellant in the belief that none of them would warrant a reversal of the judgment; and, furthermore, the questions decided seemed to be all that were really de-

batable. Moreover, the unnoticed questions on the evidence, strictly speaking, were not properly presented.

The learned counsel for appellant know that it has been affirmed and reaffirmed many times by this court, and the Appellate Court, that Rule 22 requires briefs to be so prepared that each member of the court may pass upon each question relied on without looking to the record. *Chicago, etc., R. Co.* v. *Wysor Land Co.* (1904), 163 Ind. 288, 294, 69 N. E. 546; *Price* v. *Swartz* (1911), 49 Ind. App. 627, 97 N. E. 938; *Chicago, etc., R. Co.* v. *Newkirk* (1911), 48 Ind. App. 349, 93 N. E. 860; *Repp* v. *Indianapolis, etc., Traction Co.* (1915), 184 Ind. 671, 111 N. E. 614. For instance, appellants complain of the ruling of the trial court in admitting certain evidence, but in their brief they fail to set out the objections urged to the trial court, and seem to be content with referring this court to the page and line of the record containing more than 1,400 pages, where the objections so made may be found. Without the record it would be impossible to know the character of the objections, or the reasons assigned for excluding or admitting certain evidence. But in view of the zealous insistence of counsel and on the theory that counsel have made a good-faith attempt to comply with the rules, we have taken the time to examine the record in the particular instances and will pass on these questions.

Appellants submitted twenty-one interrogatories and appellee nineteen, all of which were answered by the jury. It is conceded that all answers harmonize with the general verdict. The point is made that the interrogatories submitted by appellees "did not ask the jury to find specially upon particular questions of fact, but called for mere matters of evidence." Appellants then insist that by this means the jury was misdirected and misled as to the issue it was called upon to try, and also

influenced, controlled and guided to return an erroneous verdict.

As circumstances bearing upon a testator's mental condition or testamentary capacity at the time of making his will, evidence is admissible tending to 4. show: the amount, situation, condition and value of his property; the number and names of his children or persons who are the objects of his bounty; the treatment of such persons toward the testator and his treatment of them and the relations existing between them; that he could keep in mind such facts, and the manner in which—and to whom—his property was to be distributed; that he had capacity to comprehend the nature of the business in which he was engaged. *Ditton* v. *Hart* (1910), 175 Ind. 181, 93 N. E. 961; *Burkhart* v. *Gladish* (1890), 123 Ind. 337, 24 N. E. 118; *Staser* v. *Hogan* (1889), 120 Ind. 207, 216, 21 N. E. 911, 22 N. E. 990; *Kenworthy* v. *Williams* (1854), 5 Ind. 375; *Brelsford* v. *Aldridge* (1908), 42 Ind. App. 106, 84 N. E. 1090; *Dunaway* v. *Smoot* (1902), 23 Ky. L. Rep. 2289, 67 S. W. 62; *Howard* v. *Coke* (1847), 46 Ky. (B. Mon.) 655. Thus it will be seen that the field of investigation in such cases takes in a wide range, largely within the discretion of the trial court.

12. Remsen, Preparation and Contest of Wills 380; *Barbour* v. *Moore* (1894), 4 App. D. C. 535; *Barbour* v. *Moore* (1897), 10 App. D. C. 30, 45; *In re Mason's Will* (1908), 82 Vt. 160, 72 Atl. 329. Consequently the bounds of interrogatories are only limited to findings less than an issue, and of greater dignity than evidence. Our Code §572 Burns 1914, Acts 1897 p. 198, provides that the jury may be required to "find specially upon particular questions of fact," thereby intending such findings shall be less than an issue, yet material and substantive facts. *Manning* v. *Gasharie* (1866), 27 Ind. 399, 409; *Gates* v. *Scott* (1890), 123

Ind. 459, 24 N. E. 257; *O. M. Cockrum Co.* v. *Klein* (1905), 165 Ind. 627, 74 N. E. 529; *Ft. Wayne Cooperage Co.* v. *Page* (1908), 170 Ind. 585, 84 N. E. 145, 23 L. R. A. (N. S.) 946.

Looking to the interrogatories before us, Nos. 9, 10 and 11, calling for the specific declarations of William A. Tate made before and after the time of making his will, were clearly improper, for the reason that they call for matters of evidence.

No. 16, as to whether William A. Tate appreciated and understood the legal effect of the paper purporting to be his will, was not a proper interrogatory. *Ditton* v. *Hart, supra*, 186.

The remaining interrogatories, fifteen in number— referring to William A. Tate's owning eighty acres of land and some personal property on the date he made his will, September 19, 1895, and to his being the father of appellees, children by his first marriage, of whom the three sons remained at home on said land and helped to cultivate and improve it until they were twenty-one years of age; to the value of the land at the time of the trial; to the time, three and one-half hours, required in the preparation of the will, and during that time he made no mention of any of his children, nor spoke of their deserts or treatment toward him; to these children as being at all times considerate and respectful of their father, who had expressed great love and affection for them before September 19, 1895, and thereafter until the time of his death—were not all objectionable. Ten of these interrogatories were properly submitted, while the others cannot be approved, yet when all are considered in connection with those asked by appellants and the answers thereto, which showed beyond question testamentary incapacity, we must conclude that appellants' contention cannot be

sustained. The interrogatories which we do not approve did not affect the others to the extent of making them all vicious, nor were they, within themselves, of that importance as to influence the jury to an erroneous verdict.

We shall next consider the rulings of the court on the admission of testimony. A non-expert witness first testified to an acquaintance with the testator covering the last six or seven years of the latter's life, and to having nursed him while ill in the fall of 1913 for about six weeks, and again for about that length of time immediately before his death. He was then asked to detail various conversations had between them. During the course of his examination along this line, over appellant's objection on the ground that the question called for declarations of the testator which were not relevant to the issue and were too remote, and after counsel for appellees stated that their purpose was to qualify the witness for an opinion as to the mental condition of the testator, he was allowed to answer that during one of these conversations, in 1913, the testator said that his stepson was "a snake in the grass," and by some trick or turn was after his children's property. In another conversation Tate said that he was thankful that he had made his will so that his children would get all that belonged to him; in another, that he had acquiesced in Mrs. Tate's children having all her property, and he wanted his property to go to his children. These statements were voluntarily made in the course of various conservations and to one not interested in the testator's estate. In this connection our attention has been called to *Runkle* v. *Gates* (1858), 11 Ind. 95; *Vance* v. *Vance* (1881), 74 Ind. 370; and *McDonald* v. *McDonald* (1895), 142 Ind. 55, 41 N. E. 336, where it is held that statements of a testator are not admissible in actions of contest upon the ground of fraud or undue in-

fluence. The basis for this ruling does not obtain where the contest is upon the ground of unsoundness of mind, for the reason that in the former class of cases the declarations or statements are used as direct proof of the fact of fraud or undue influence, or as proof that the fact asserted did occur, and are inhibited by the hearsay rule, unless admitted as part of the *res gestae;* while the latter class of cases involves a consideration of many circumstances from which the ultimate fact may be inferred. Consequently, on the ground of necessity, the courts have recognized and adopted an exception 16. to the hearsay and remote rule, which permits all utterances and conduct of the testator to be brought to the attention of the court or jury trying the issue, not for the purpose of proving the truth of the particular declarations or statements, but, from them, the condition of the testator's mind at various times for use as a basis for inferring his condition at the time the instrument was executed. Under the exception noted and for the purpose stated, the conduct of the testator may be shown before and after the testamentary act. *Bower* v. *Bower* (1895), 142 Ind. 194, 41 N. E. 523; *In re Estate of Wharton* (1907), 132 Iowa 714, 109 N. W. 492; *Watson* v. *Anderson* (1847), 11 Ala. 43; *Spencer* v. *Terry's Estate* (1903), 133 Mich. 39, 94 N. W. 372; 1 Alexander, Wills §361; *Haines* v. *Hayden* (1893), 95 Mich. 332, 347, 54 N. W. 911, 35 Am. St. 566. One reason for this rule, as said in the case last cited, is that "it very rarely occurs that this state of mind can be shown by declarations made at the very moment of the execution of the will." But the exact time which may be covered by either of these periods is largely within the discretion of the trial court, or as sometimes said "that issue must, of necessity, evoke an inquiry of the broadest range." *Bower* v. *Bower, supra,* 199; 1 Alexander, Wills §361; *Moore* v. *McDon-*

*ald* (1887), 68 Md. 321, 339, 12 Atl. 117; *Johnston* v. *Johnston* (1912), 174 Ala. 220, 226, 57 South. 450; *In re Estate of Lefevre* (1894), 102 Mich. 568, 61 N. W. 3; 1 Wigmore, Evidence §233.

In cases like this it is now well settled that a nonexpert witness may express his opinion as to the mental condition of the testator after detailing to the jury his personal knowledge of the testator, which may include the latter's gestures, his appearance and conduct, his memory, his deportment, his conversations and declarations, his business dealings, and any other act of commission or omission considered by him in forming an opinion of the testator's mental condition. *Swygart* v. *Willard* (1905), 166 Ind. 25, 76 N. E. 755; *Bower* v. *Bower, supra; McCoy* v. *Jordan* (1904), 184 Mass. 575, 69 N. E. 358; *Montana R. Co.* v. *Warren* (1890), 137 U. S. 348, 353, 11 Sup. Ct. 96, 34 L. Ed. 681; 1 Wigmore, Evidence §228. The court or jury is thereby apprised of the reasons relied on by the witness to sustain his opinion, which go to the jury for whatever they are worth. The probative force of such narrated circumstances and opinion must necessarily depend upon how inseparably connected they are with the precise time of the making of the will. The application of such evidence and its only purpose should be carefully placed before the jury by a proper instruction, as was done in this case. Returning to the declarations to which objections were made, it would seem to us that when they are considered in connection with the other evidence forming a chain back to the hour of the testamentary act, together with the announced purpose of counsel when introducing it, and the instructions given, we cannot say the trial court abused its discretion in the particulars mentioned. 3 Chamberlayne, Mod. Law of Evidence §1918. *Olmstead* v. *Webb* (1895), 5 App. D. C. 38, 52.

Complaint is made on the admission of certain evidence tending to prove the value of testator's property at the time of his death, and in permitting appellees to introduce in evidence the inventory of the personal estate of the testator made by his executor. This inventory was made up of various items of personal property totaling in value $485. The value of testator's property at the time of his death was not in issue, and could have no bearing or relevancy to the question at issue. The evidence was therefore on a collateral matter. The inventory was nothing more than an *ex parte* statement, and within the hearsay rule. *Barricklow* v. *Stewart* (1904), 163 Ind. 438, 72 N. E. 128. This evidence having been admitted, the question is, Was it harmful?

There is no evidence of property value on the date the will was executed. For aught that appears from the evidence the value of his property on the date of the will may have been as much or more than it was at the time of testator's death. However, it does appear, incidentally, that he owned an eighty-acre tract of land and some personal property. At the time of his death he owned the same land, which was worth $200 an acre, and in addition a house and lot in Kokomo, of the approximate value of $2,000, and the personalty heretofore mentioned. These valuations, thrown into the case as they were, could not have influenced the jury one way or the other upon the single issue, clearly defined by the instructions. Our attention has been called to the case of *Savage* v. *Bowen* (1905), 103 Va. 540, 49 S. E. 668. The issue in that case was whether the will in controversy was, in fact, the last will of the testator. The court held that proof of enhanced value of the property was irrelevant, and calculated to divert the minds of the jury from the real issue, yet the case was not reversed for that error alone.

The instructions, when taken together, proceeded upon a theory not warranted by the evidence, and were therefore held to be erroneous. In this case we must assume that the jury was composed of men of average intelligence, and more or less acquainted with the general condition of the country and its effect upon the value of land generally. They were bound to know in the ordinary course of events that the eighty-acre tract of land was much more valuable in February, 1914, than it was in September, 1895, and it could not be expected that they would act entirely free from the impressions thus obtained, evidence or no evidence of value. After a full consideration of this entire record, from every angle suggested or which occurs to us, we are not persuaded that the error in question was prejudicial, or that we would be justified in reversing the judgment for this cause alone. *Wyse* v. *Wyse* (1898), 155 N. Y. 367, 49 N. E. 942.

It is also insisted that the court erred in admitting testimony tending to prove admissions of Gilly A. Tate after the death of testator and not within the presence or hearing of her coappellant, Silas A. Ramseyer. Ramseyer is the executor of the Tate estate and is not otherwise interested. Under this state of facts the executor is not to be regarded as taking beneficially but only as accepting duties. *Livingston's Appeal* (1893), 63 Conn. 68, 78, 26 Atl. 470. *Gilly A. Tate was the sole beneficiary under this will,* and her admissions as to the mental capacity of the testator are receivable, since they affect her interest only. *Wallis* v. *Luhring* (1893), 134 Ind. 447, 451, 34 N. E. 231, Ann. Cas. 1918A 1067; 40 Cyc 1289; 1 Schouler, Wills §195.

Appellants challenge other rulings of the court in admitting testimony and in refusing to strike out certain answers. We have carefully considered each of these

specifications, and have concluded that no sufficient reason is pointed out requiring us to hold that reversible error in any of these particulars is shown.

It is also insisted that one of appellee's counsel in his argument to the jury was guilty of prejudicial misconduct. The alleged misconduct is exhibited to us by a bill of exceptions, whereby it is made to appear that the misconduct consisted in counsel arguing to the jury certain statements of the testator as though admitted to prove an ultimate fact not provable under the issue in this case; that is to say, the issue was not what distribution he intended to make of his property but whether or not he had mental capacity to do what he did. The statements counsel sought to pervert were admitted not for the purpose of proving an intention on the part of the testator but as pertaining to his conduct or mental activities as observed by his associates or acquaintances. Such statements were in evidence for no other purpose, and when counsel attempted to otherwise apply them, it was the duty of the trial court, upon request of counsel for appellants, to set the jury right by explaining to the jury the exact purpose and only reason for the admission of such evidence.

Appellees say the alleged misconduct was invited by one of appellants' counsel in his argument to the jury. If this be true, the facts in justification should appear in the bill of exceptions, not for the purpose of justifying one wrong by another but for the purpose of placing the reviewing court as nearly as possible in the position of the trial court. No such showing is made, and the question is here upon the facts stated in the bill to be considered in the light of the facts disclosed by the record.

When the misconduct of counsel arose, two methods of procedure were open to appellants if they would reserve any question for review: (1) To promptly interpose

and state their objection, if reasonably required, to the objectionable language or argument, and request the court to so instruct the jury as to counteract any harmful effect of such language or argument, and if granted, and such instruction was not sufficient to cure the error, follow such action by a motion to have the submission set aside; (2) to promptly object to the improper language or argument of counsel, and move to set aside the submission, stating reasons why the harm done could not be cured by any action the court might take in the matter. Of course, an exception must be reserved to all adverse rulings thus obtained. Appellants occupy the position of having properly objected to the argument claimed to constitute misconduct, with a ruling against them properly saved with an additional right to move that the submission be set aside, of which latter privilege they failed to avail themselves, thereby holding a point in reserve to undo the verdict if unfavorable. This failure will be regarded as an admission that the alleged improper argument did not furnish ground sufficient to set aside the submission. Consequently, appellants are in the attitude of coming to this court and asking that a judgment be reversed on account of an alleged error occurring at the trial of the cause which would not warrant the withdrawal of the case from the jury. The question of misconduct was again called to the attention of the trial court by a specification in the motion for a new trial. The disposition of that motion carries with it the assumption that the court, upon a re-examination of the matter, concluded that no harm was done appellants by the ruling in question. Nor are we convinced that appellants' position can be sustained.

Answering appellants' insistence that we were in error in holding that there was sufficient evidence of testamentary capacity to take the case to the jury, it

is proper to say that we did not attempt to set out in our opinion all the evidence in the case, nor did we attempt to draw all the inferences which the evidence admits. At the earnest request of counsel, we have taken the time to again carefully examine the evidence, which discloses the record of a man's life so completely and minutely that it is apparent that upon a retrial of the case nothing of serious import could be produced in addition to what is here presented.

If we were to weigh the evidence, our finding would probably be different than that of the jury; but such is not our province, and we decline to do so.

The petition for a rehearing is overruled.

NOTE.—Reported in 116 N. E. 417, 119 N. E. 716. Wills: what constitutes capacity or incapacity to make, L. R. A. 1915A 443; see under (4-6) 40 Cyc 1004-1006.