No. 16,165.

WALLIS ET AL. *v.* LUHRING ET AL.

INSTRUCTIONS TO JURY.— *Will.—Mental Incapacity.—Instructions as to.—* In an action contesting the validity of a will, because of unsoundness of mind of the testatrix and undue influence, the plaintiffs requested the court to instruct the jury that unsoundness of mind, in law, means the same thing as insanity; but this the court refused to give, and of its own motion gave the statutory definition of "a person of unsound mind," and otherwise fully instructed the jury as to the various degrees of mental disease, and as to what condition and degree of mental infirmity would disqualify a person from making a valid will, the instruction given fully covering all that was requested. The action of the court was clearly right.

INSANITY.—*Presumption of Sanity.— When Presumption of Insanity Obtains.—*The law presumes that every person is of sound mind, until the contrary is shown; and when unsoundness of mind of a permanent nature has been established, the presumption is that that state of mind continues until the contrary is proven.

EVIDENCE.—*Declarations of Deceased Person Against Interest.— Will.— Legatee.— Undue Influence.— Unsoundness of Mind.—*The declarations of a deceased legatee as to the incapacity of the testator to make a will, and declarations tending to show undue influence, being against the interest of the legatee, are competent in evidence against his heir, made a party in his stead, and representing all his interest.

From the Gibson Circuit Court.

*J. E. McCullough, J. H. Miller* and *H. A. Yeager,* for appellants.

*D. B. Kumler, C. A. Buskirk* and *J. W. Brady,* for appellees.

HOWARD, J.—This was an action brought by appellees to contest the will of Catharine Wallis, on the grounds of unsoundness of mind and undue influence. There was a general denial, and the issue was submitted to a jury, who returned a special verdict, finding for appellees. A motion for a new trial was overruled, which ruling is assigned as error.

The questions discussed by counsel relate principally

to instructions given, refused, or modified, and to the admission of certain evidence.

The testimony as to unsoundness of mind was all by non-expert witnesses. It was conflicting, but there was evidence to sustain the verdict.

A number of witnesses introduced by appellees, after having testified on direct examination that the testatrix was of unsound mind, testified on cross-examination that she was not insane or crazy.

Dr. Ballard, the only physician who testified, after stating many facts relating to his attendance upon the testatrix as her family physician, said: "In my opinion she was not fully sound in mind or body, for several years before she died."

On cross-examination he said: "I am not testifying as an expert, and I do not say that she was insane. I do not think Mrs. Wallis was insane or crazy. I am not here as an expert. I do not know what term the medical books use. I suppose there is a difference between insanity and unsoundness of mind. If a person is not of perfectly sound mind, then he must be of unsound mind, and yet he is neither insane nor crazy. That is my opinion. Mrs. Wallis was not insane, but she was not perfectly sound."

Other witnesses, after relating facts on which they based their opinions, made the same distinction between unsoundness of mind and insanity.

Nancy Smith, a daughter, one of the appellees, said: "Her mind was unsound;" and afterwards added: "I did not regard mother as crazy or insane."

Hester A. Pritchett gave similar testimony, stating many facts and circumstances in her mother's life during her last years on which she based her testimony, showing absent-mindedness, forgetfulness, want of knowl-

edge of her children at times, and unaccountable actions of various kinds.

Amanda Luhring testified also to various facts upon which she based her opinion, and said: "In my opinion my mother had not been of sound mind for five years. The first change I noticed was about one and one-half years after father died; she talked sensibly only occasionally; would drop off to some other subject; my mother was not crazy or insane; I mean by an insane person a person who is wild."

As bearing on this and other like evidence, appellant requested the court to instruct the jury that unsoundness of mind, in law, means the same thing as insanity. This instruction the court refused, but of its own motion gave instead the statutory definition of the words, "A person of unsound mind," and otherwise very fully instructed the jury as to the various degrees of mental disease, and as to what condition and degree of mental infirmity would disqualify a person from making a valid will.

We think this was correct; it was the course followed by the trial court in the case of *McCammon* v. *Cunningham*, 108 Ind. 545, to which appellant refers. The form of the instruction requested by appellant was objectionable, and calculated to mislead and confuse the jury. The witnesses, and probably the jury also, entertained the popular notion that craziness or insanity implies a wild and uncontrollable form of mental derangement, while unsoundness of mind describes a milder and more placid form of the disease. The court very properly avoided confusing the minds of the jury on this point, and instead detailed very fully the various forms of disease, all included under the terms "unsoundness of mind."

The instructions on this point, while full and complete,

were at the same time such as were intelligible to the jury and suitable to the character of the evidence detailed before them. Names are not of so much consequence as things, and it was more important that the jury should understand the character and degree of mental infirmity which would incapacitate a person from making a will, than to know whether the disease should be called insanity, unsoundness of mind, imbecility, or by some other name. The instructions given fully covered all that was requested on this point.

Appellants object to the following paragraph in an instruction given by the court: "The law presumes that every person is of sound mind until the contrary is proven. Yet when unsoundness of mind of a permanent nature has been established, the presumption is that that state of unsoundness exists or continues until the contrary is shown."

Appellant thinks that the court here assumes "that if the evidence shows unsoundness of mind at all, before the execution of the will, that unsoundness was of a permanent nature." Appellants are mistaken. The court makes no assumption—that is left to the jury; but if the jury find that such unsoundness has been established, they are instructed that the presumption of the law is that such unsoundness continues until removed by proof. This is correct.

Appellants claim that certain evidence given by the witness William Blancet was improperly admitted. This witness testified, over appellant's objection, that Robert Wallis, a son of testatrix, and to whom she had devised the bulk of her property, had admitted to him, in conversation, that he thought his mother was not of sound mind and was incompetent to make a will. The objection made to this evidence is that Robert Wallis, being one of the devisees of the will, and being dead, and his

administrator not being a party to the action, it was immaterial whether he had such conversation or not; that the statements of one devisee or legatee made out of court are not competent to be proven as admissions to impeach or sustain the will.

It is true that Robert Wallis is dead and his administrator was not a party. But it fully appears that the appellant Melissa Wallis is his widow and his sole heir at law. The jury found that the sole heirs of the testatrix were her children, the appellees, and the said widow of her deceased son Robert. All those who had any interest in the estate of the testatrix were parties to this suit. If Robert were living and made a party his declarations against his interest would have been competent; they are equally competent against his sole heir, made a party in his stead and representing all his interest. This is not like a case where the admission of such declarations would injuriously affect the interests of other persons interested on his side under the will. If there were other defendants whose interests would be prejudiced by the admissions of one of the defendants, or of one whose privy was a defendant, then the case of *Hayes* v. *Burkam,* 67 Ind. 359, and others relied upon by appellants, might be in point. In the case before us, the admissions of Robert Wallis are substantially admissions of the appellant, his sole heir, and injuriously affect no one else.

A similar objection was made to testimony given by the witness George Green, to the effect that Robert Wallis, some time before the date of the will, had said: "Mother's got to make a will some of these days. She is not going to live very long, and I am going to have all the property or raise hell." What has been said as to the admission of testimony of conversation of Robert with William Blancet, applies also here. This evidence tended to show undue influence on the part of Robert, a

main issue in the case.   1 Greenleaf Ev., section 108;  1 Taylor Ev., 7th ed., section 588;  Wharton's Crim. Ev., sections 262, 263.   The evidence was competent to go to the jury for what it was worth.

Objection was made to the admission of evidence by Henry Luhring, the husband of one of the appellees. The contention is somewhat obscure and wholly untenable.   Because Robert Wallis is dead, and because the setting aside of his mother's will would diminish his estate, it is insisted that the testimony is prohibited by sections 498, 499 and 501, R. S. 1881.

In *Lamb* v. *Lamb*, 105 Ind. 456, this question was fully considered, and it was held that the statutes referred to do not prohibit parties from testifying in such a case as this and on such a subject as the mental capacity of a testator;  and also that heirs are not prohibited from testifying, in a suit to set aside a will, as to the mental capacity of the testator, even though the executor were a party.   See, also, *Staser* v. *Hogan*, 120 Ind. 207 (214), and *Burkhart* v. *Gladish*, 123 Ind. 337, etc.

It may also be noted that by the amendments of 1883 to these sections, Elliott's Supp., section 19, the statutes are broadened, and the discretion of the court enlarged as to the admission of such evidence.   We do not think there was any abuse of discretion in this case.

Appellants complain that the court should not have refused to instruct the jury as to illusions and hallucinations as features of insanity.   The court, of its own motion, and on request of appellants and appellees, having very fully instructed the jury as to the various forms and characteristics of unsoundness of mind, and having applied such instructions to the case before the court and to the evidence, we think there was no impropriety in refusing to extend these instructions, even though the

instructions asked might be correct as abstract statements of law. The subject was already fully covered.

Appellants finally ask us to review the evidence, insisting that it is not sufficient to sustain the verdict, upon the issue of undue influence, and even contending that there was no evidence of that character. Appellants are certainly mistaken in this contention. We have looked through the evidence carefully, and find much which the jury might reasonably hold to be sufficient on both the issue of unsoundness of mind and of undue influence. It is true that there was much evidence in conflict with this, but it was for the jury to weigh the evidence and to decide the issues.

The judgment is affirmed.

Filed May 18, 1893.