CONNER ET AL. *v.* FIRST NATIONAL BANK IN WABASH ET AL.

[No. 17,643. Filed December 19, 1947. Rehearing denied March 4, 1948. Transfer denied April 5, 1948.]

174

*Oscar C. Strom* and *Wm. S. Spangler,* both of Gary, attorneys for appellants.

*Cleon H. Foust,* Attorney General, and *Jas. D. Harrison,* Deputy Attorney General, *Van Atta, Batton and Harker* of Marion, *Russell J. Wildman* of Peru, *John W. Beauchamp* of Wabash, and *John W. Campbell* of Marion, attorneys for appellees.

CRUMPACKER, J.—This appeal concerns the validity of the last will and testament of Isaac Lewis Conner who died on March 16, 1944, a resident of Wabash County, Indiana. At the time of his death the testator was a bachelor 74 years old and the appellants are among his collateral next of kin and as such, in the absence of a valid will, would inherit a substantial part of his estate. By their complaint below they sought to set his will aside on the grounds (1) that he was of unsound mind at the time he executed said will; (2) that his execution thereof was procurred by undue influence; and (3) that said will was unduly executed. The cause was tried to a jury and at the conclusion of all the evidence the court directed a verdict sustaining the will on the undue influence and execution issues and left for the jury's determination only the question of the testator's mental capacity to make a valid will. On this issue the jury found that the testator was a person of sound mind when he executed the will in controversy and on such verdict the court, over appellants' motion for a new trial, entered judgment "that said will is a valid will and that the probate of the same shall not be set aside."

In support of their assignment of errors the appellants state 68 "Propositions" and in excess of 100 "Points" and refer us to some 225 decisions of this and other jurisdictions together with many text books on wills, evidence, expert testimony and medical jurisprudence. Obviously, within the limited scope of this opinion, all these questions cannot be discussed in the light of the authority cited in their support but, for the purpose of establishing the law of the case, this opinion may be treated as a holding against the appellants on all questions upon which we make no specific comment.

The appellants first complain that the court erroneously withdrew their case, based on undue influence in the execution of the will, from the jury's consideration. The will involved devises a 215 acre farm to the appellee, The First National Bank in Wabash, in trust for the benefit of the American Red Cross and, to the same trustee, bequeaths $100,000 in government securities in trust for the use of various high schools in Indiana for establishing scholarships in institutions of higher learning. An 80-acre farm is devised to two of the testator's nieces and their husbands and $2,000 in U. S. Savings Bonds is bequeathed to each of 7 other relatives. It is not contended that these beneficiaries, or any one of them, exercised any influence, undue or otherwise, upon the testator in making the character of will he did, nor is there one iota of evidence in the record to that effect. It is seriously urged, however, that there is evidence tending to prove that the appellee, The First National Bank in Wabash, exercised such influence for the purpose of providing itself with a lucrative item of business for many years. We agree with the appellants that the exercise of undue influence by a person other than a beneficiary may invalidate a will, *Johnson* v. *Samuels* (1917), 186 Ind. 56, 114 N. E. 977, and that such influence may be shown by circumstantial evidence. We further agree that the appellants are entitled to the benefit of all inferences of fact which may be deduced fairly from the direct evidence and we must accept as true all the facts which the evidence tends to prove against the appellees, who requested the directed verdict.

With these principles in mind we have examined the evidence and find that it discloses nothing more than a fertile field for the exercise of improper influence by the appellee bank together with an oppor-

tunity to do so. That it actually exercised such influence, however, cannot reasonably be inferred from any evidence in the case. As the appellants have not seen fit to brief the question of undue execution we treat the same as waived. We therefore conclude that the issues of undue influence and undue execution were properly withdrawn from the consideration of the jury.

As bearing on the question of the testator's mental capacity to make a will the appellants sought to prove the insanity of his sister Rose Conner. They attempted to do this by the opinion of a lay witness based on the things she had seen the said Rose Conner do and what she had heard her say, all as related to the jury by the witness. Such evidence was excluded and we think properly so. It is the rule, announced in most states where the question has been presented, that when the sanity of a testator is under judicial investigation and other evidence has been produced tending to show his mental unsoundness, it is competent to prove the insanity of his collateral blood relatives not farther removed than aunts and uncles. *Martin* v. *Beatty* (1912), 254 Ill. 615, 98 N. E. 996; *People* v. *Marshal* (1933), 209 Cal. 540, 289 Pac. 629; *State* v. *Robbins* (1899), 109 Iowa 650, 80 N. W. 1061; *Prentis* v. *Bates* (1892), 93 Mich. 234, 53 N. E. 153, 17 L. R. A. 494; *McMillan* v. *Carlton* (1926), 121 Kan. 797, 250 Pac. 308; *Howell State Bank* v. *Novotny* (1934), 69 F. 2d 32. Indiana does not seem to have passed directly on the question but in *Bradley* v. *The State* (1869), 31 Ind. 492, 503, the Supreme Court, tacitly at least, gave the rule recognition. In that case the court approved an instruction stating: "The facts that the mother was insane, that the twin brother of the mother was also insane, and that a cousin was insane, if proved, would not be sufficient of themselves to show insanity in the defendant, but are facts strongly tend-

ing to show hereditary insanity in the family, and proper for you to consider with the other testimony in the case, to aid you in determining whether the defendant was insane or not when the act was committed."

We are therefore of the opinion that the appellants, having produced evidence tending to prove that the testator was of unsound mind when he made his will, were entitled to prove the insanity of his immediate collateral relatives such as brothers, sisters, uncles or aunts, but we cannot sanction the manner in which they sought to do so. They tendered the insanity of Rose Conner, the testator's sister, as a collateral issue and sought to prove it by the opinion of lay witnesses based on their own testimony. This would have opened the door to rebuttal testimony of the same character and a numerous array of witnesses, pro and con, would necessarily have occupied the court's time indefinitely on a collateral matter. The jury was concerned with the insanity of Rose Conner only as an adjudicated or accepted fact and could not be called upon to determine the question for themselves.

During the progress of the trial the appellants qualified Dr. R. R. Naugle as an expert on internal medicine and mental diseases. As such he testified as follows: "I have seen Isaac Conner along the Dora Pike frequently since 1934 until 1943. I never passed him on the road, but picked him up on an average of 4 to 8 times per year, maybe more than that. On those occasions I observed him. The last time I was impressed by his untidiness. He stunk up the car. He appeared to be tired and in a run-down condition, was very untidy. When coming from town he would have a pack of groceries on his back. Frequently he would recognize me, but sometimes he wouldn't. I might ask him about the weather and he would answer in some vague and opposite subject,

sometimes unintelligible, frequently he would mumble in his answers, the conversation was unsatisfactory as to interest and as to knowledge. When I let him out of the car he would grunt. I saw him also at his home on the day I took him to the hospital. I attended Conner after I took him to the Wabash County Hospital 3 days from December 18, 1943, to December 21, 1943. I did not attend him after that and that is the only time I attended him professionally." Counsel for the appellants then propounded the following question: "Dr. Naugle, from your observations of Isaac Conner during the two years that he went to the hospital—two years before he went to the hospital and the facts that you learned concerning him and the facts that you testified to thus far in your testimony, did you then before he went to the hospital and do you now have an opinion and view as to what was his mental condition and what, if any, ailment he was suffering from?"

To this question the following objection was interposed by the appellees: "To which we object for the reason that the witness can only express an opinion as to whether or not the decedent was of sound or unsound mind, and for the further reason that anything he might have learned professionally would be privileged." After an offer to prove this objection was sustained by the court. It will be noted that the objection assigns two grounds (1) that the question does not confine the doctor's answer to the mere expression of an opinion as to whether or not the testator was a person of sound or unsound mind; and (2) the question calls for an opinion based on facts learned through the confidential relationship of doctor and patient.

The court, in sustaining the objection, indulged in considerable comment clearly indicating that it understood the law to be that medical experts, as such,

can express opinions only in response to hypothetical questions and when such expert seeks to base an opinion on matters and things within his own knowledge but equally open to the observation of the testator's public, he must testify as a layman and the probative value of his opinion measured and weighed as that of a lay witness. Such is not the law. An expert is not limited, in stating his opinion, to facts assumed in a hypothetical question but may testify concerning facts within his personal knowledge, if not privileged, and may, after stating such facts to the jury, express an opinion thereon. *Town of Newburgh* v. *Jones* (1945), 115 Ind. App. 320, 58 N. E. 2d 938; *Mutual Life Ins. Co. of N. Y.* v. *Jay* (1942), 112 Ind. App. 383, 44 N. E. 2d 1020; *The Board of Commissioners of Wabash County* v. *Pearson* (1889), 120 Ind. 426, 22 N. E. 134; *The Louisville, New Albany and Chicago Railway Company* v. *Snyder* (1889), 117 Ind. 435, 20 N. E. 284.

Except as bearing on the question of privilege, it is of no consequence that the facts furnishing the basis of an expert opinion are open to the observation of the public in general because such facts, by reason of the particular and superior knowledge of the expert, may have a significance to him which is not apparent to the layman. The competency of the testimony hinges upon whether the subject of the enquiry is one concerning which the jury is as competent to form an opinion as is the expert It cannot be questioned that the mental capacity of a testator is a proper subject for expert examination and the appellants were entitled to have Dr. Naugle's opinion go to the jury as that of a witness professing to possess a superior knowledge of mental diseases gained through special education and experience. This the court refused to permit but on the contrary admitted the testimony with the express limi-

tation that it be received as the testimony of a lay witness because it was based on matters open to anyone with whom the testator came in casual contact. On this theory the court also refused to permit Dr. Naugle to state his opinion as to the disease, if any, with which the testator was afflicted at the time of his observation. It is conceded that the opinion of a lay witness on such a subject is incompetent but, as we have heretofore said, the doctor had been qualified as an expert and his testimony could not properly be confined to that of a layman on the theory adopted by the court.

It was not only proper but highly important to the appellants' case that they be permitted to show, if they could, that the testator's alleged insanity was due to a physical affliction which was permanent in nature and probably would become progressively worse until his death. *Wallis* v. *Luhring* (1893), 134 Ind. 447, 34 N. E. 231; *Rush* v. *McGee* (1871), 36 Ind. 69; *Harrison* v. *Bishop* (1892), 131 Ind. 161, 30 N. E. 1069. The appellants offer to prove, in support of the question objected to and questions that would logically follow it, indicates that such would have been the effect of Dr. Naugle's testimony, if permitted to answer, but the court, adhering to its theory that such evidence could be elicited only through the medium of a hypothetical question, refused to permit such line of enquiry. It is true that the doctor's opinion in respect to these matters could have been obtained in answer to a proper hypothetical question but the appellants could not properly be forced to use that method of proof when they had an available witness competent to testify from his own knowledge, the source of which he had related to the jury. It is reasonable to assume that the testimony of a doctor, based on his own observations and knowledge, may have more weight than that of a doctor, equally

skilled but a total stranger to the person under enquiry, based on facts assumed in a hypothetical question. The appellees were evidently under such impression because they sought to destroy the effect of opinions expressed by other experts in response to hypothetical questions by showing that they had no personal knowledge of or acquaintance with the testator. But be that as it may, the appellants had the unquestioned right to prove their case in any manner they saw fit if the method chosen lay within the scope of legitimate proof.

The question under consideration was further objected to on the theory that it calls for the doctor's opinion based on facts he learned through a confidential relationship. The undisputed evidence indicates that Dr. Naugle treated the testator professionally from December 18 to December 21, 1943, at the Wabash County Hospital and at no other time or place. In our opinion the question, isolated and alone, restricts the basis of the doctor's opinion to his observations of the testator during the two-year period immediately prior to December 18, 1943, and therefore excludes privileged information. When the question is returned to its context it becomes apparent beyond peradventure that such was its scope.

The appellees insist, however, that the offer to prove was much broader than any responsive answer to the question could possibly have been and that therefore the court was justified in sustaining the objection no matter how erroneous its theory in doing so may have been. There is precedent in Indiana for such contention but the rule is limited in its application to situations where part of the answer, as indicated by the offer to prove, would be competent and part incompetent. In such instances the court is justified in rejecting the entire offer and sustaining the ob-

jection because it is not bound to sift the wheat from the chaff, so to speak. *Lessig* v. *Davis, Admr.* (1920), 72 Ind. App. 111, 125 N. E. 579. We have no such situation here. Although broader than the question, there is nothing in the appellants' offer that it would not have been competent to establish by Dr. Naugle in response to the question under consideration and subsequent questions for which a responsive answer would have opened the door.

We have been concerned somewhat with the proposition that, notwithstanding the error we have discussed at length, the case was fairly tried and a correct result reached. As bearing on that question we find a record which would justify a verdict either way. The appellants were prepared to prove, by an expert witness who knew the testator and had observed him over a period of two years ending December 18, 1943, that he was afflicted with senile dementia and that such mental condition was caused by arteriosclerosis which is an incurable, degenerative disease that ordinarily becomes progressively worse. It was during this period that the testator made his will and it seems to us that this evidence was vital to the appellants' case. It is no answer to say that those matters could all have been shown through the medium of a timely hypothetical question of which the appellants failed to avail themselves. The method of proof they chose was proper but was frustrated by the trial court's erroneous conception of the law governing the admissibility of expert tesimony. Under the circumstances we cannot say that the case was fairly tried on its merits and a correct result reached.

The judgment is reversed with instructions to sustain the appellants' motion for a new trial.

NOTE.—Reported in 76 N. E. 2d 262.

## ON PETITION FOR REHEARING

CRUMPACKER, J.—In the course of the trial of this cause the appellants propounded the following question to one R. R. Naugle whom they had previously qualified as an expert medical witness: "Dr. Naugle, from your observations of Isaac Conner during the two years he ment to the hospital—two years before the time he went to the hospital and the facts that you learned concerning him and the facts that you testified to thus far in your testimony, did you then before he went to the hospital and do you now have an opinion and view as to what was his mental condition and what, if any, ailment he was suffering from?" The doctor answered that he had an opinion and thereupon he was asked, "What is that opinion?" To this question the appellee interposed the following objection: "To which we object for the reason that the witness can only express an opinion as to whether or not the decedent was of sound or unsound mind, and for the further reason that anything he might have learned professionally would be privileged." This objection was sustained by the trial court and because of such ruling we reversed the judgment herein for reasons fully set out in our written opinion. *Ante,* p. 173; 76 N. E. 2d 262.

The salient ground for a rehearing, presented by the appellees' petition, is to the effect that if a ruling can be sustained upon any theory, whether advanced at the time of such ruling or not, it must stand and before a judgment can be reversed because of it the party appealing must show that such ruling was wrong upon any theory whatsoever. That such is the general rule there can be no doubt. *Haas* v. *Cones Mfg. Co.* (1900), 25 Ind. App. 469, 58 N. E. 499; *Eck-*

*man* v. *Funderburg* (1914), 183 Ind. 208, 108 N. E. 577. The appellees contend that their objection to the question here involved could properly have been sustained on the theory that it is double even though such objection was not advanced at the time of the court's ruling and therefore we cannot lawfully hold such ruling to be reversible error. The question is double, the appellees assert, because it calls for answers to two pertinent inquiries: (1) What was the testator's mental condition; and (2) with what ailment, if any, was he suffering? Our courts have held that it is error to overrule an objection to a question that is double in form where one part of the question assumes the existence of a disputed fact. *Sullivan* v. *State* (1928), 200 Ind. 43, 161 N. E. 265. The general rule is stated in 70 C. J., Witnesses, § 672, in the following language: "Questions containing more than one proposition to which different answers might be given are improper." An examination of the cases in which this rule is applied reveals that either part of the objectionable question is improper or it calls for a catagorical answer in a situation where one element of the question might be answered, "yes" and the other, "no." Questions concerning a witness' "reputation for truthfulness, honesty and fair dealing" have been held improper as presenting two separate issues to which different answers might be made. *Brannon* v. *Gartman* (Texas), 283 S. W. 817. The question here involved presents none of these difficulties. Its plain purport is to elicit the opinion of the witness as to the mental condition of the testator and what disease, if any, was responsible for it. It may be conceded that technically the question is double but its subject matter was vital to the appellants' case and they had the right to explore that subject in the manner

chosen. The record indicates, beyond peradventure, that this right would have been denied to them even though each phase of the inquiry had been put to the witness in a separate question. Under such circumstances to write the error off on the theory that the ruling can be upheld for purely technical reasons can hardly be justified.

All other questions presented by the appellees' petition for a rehearing are fully discussed and decided in our former opinion and to the holdings there announced we still adhere.

Rehearing denied.

NOTE.—Reported in 77 N. E. 2d 598.